Henry Greg HUGHES,[1] Respondent
Below–Appellant,

v.

Sandra K. PETERSON, Petitioner
Below–Appellee.

No. 434, 2011.

Supreme Court of Delaware.

Submitted: Feb. 10, 2012.
Decided: March 13, 2012.
Reargument Denied April 3, 2012.

1. The Court *sua sponte* assigned pseudonyms to the parties by Order dated August 18, 2011.

Supr. Ct. R. 7(d).

Henry G. Hughes, pro se.

David J. Weidman, Esquire, Hudson, Jones, Jaywork & Fisher, LLC, Georgetown, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND and BERGER, Justices.

HOLLAND, Justice:

The respondent-appellant, Henry Greg Hughes ("Mr. Hughes"), filed an appeal from the Family Court's final judgment regarding attorney's fees; its June 15, 2011 order dividing the marital property; and its May 12, 2010 order granting the motion of the petitioner-appellee, Sandra K. Peterson ("Ms. Peterson"), to rescind the parties' separation agreement.[2] We find no merit to any of the arguments presented by Mr. Hughes in this appeal. Accordingly, we affirm the judgments of the Family Court.

### Facts

The record reflects that Mr. Hughes and Ms. Peterson were married in April 2005. It was a second marriage for each and there were no children born of the marriage. Ms. Peterson was employed as a correctional officer in Maryland. Mr. Hughes was disabled with a bad leg and received Social Security disability benefits as well as a monthly insurance benefit. In August 2008, Mr. Hughes filed a petition for protection from abuse ("PFA") alleging that Ms. Peterson had grabbed his neck during an argument.

A mediation on the PFA was scheduled for September 4, 2008. On the morning of the mediation, Mr. Hughes presented Ms. Peterson with a handwritten separation agreement. He told her that he would voluntarily dismiss the PFA petition and work to save their marriage if she would sign the agreement. The subsequent events of that morning are summarized in the Family Court's opinion, as follows:

---

**2.** Mr. Hughes previously filed his appeal while Ms. Peterson's request for attorney's fees was still pending in the Family Court. We, therefore, dismissed the appeal as interlocutory. *See Lipson v. Lipson,* 799 A.2d 345, 348–49 (Del.2001). The instant appeal was properly filed within thirty days of the Family Court's final order regarding attorney's fees. Supr. Ct. R. 6.

Wife had never before seen this document. Nevertheless, Wife agreed to sign the document in exchange for a chance to reconcile their marriage and have the PFA dismissed. The parties sought out the Court notary, Carl Ballato (Ballato), who met with the parties and explained he could not notarize the document while an active PFA existed between them. The parties then signed a Stipulation of Dismissal of the PFA without prejudice, and returned to Ballato who notarized the proposed settlement agreement which both parties signed....

Husband relied on the testimony of Ballato, who stated he did not remember Wife being in an emotional state when he notarized the proposed agreement. However, Ballato wrote in his log:

Concern/Clarifiat [sic] Both parties were scheduled for a P.F.A. case and refused to sign until the no contract order was dismissed—concerned of future allegation of intimidation—came back same day after case was dismissed and signed.

Ballato indicated this was the first time he ever made an entry such as this, regarding a PFA, in his notary log.

The couple continued to live together for several months. In March 2009, Ms. Peterson filed both a PFA petition and a petition for divorce in the Family Court. In her PFA petition, Ms. Peterson alleged that Mr. Hughes was threatening to use his prior PFA to jeopardize her job.

In May 2009, Ms. Peterson filed a motion in the Family Court to rescind the separation agreement. The Family Court Commissioner granted the motion on May 26, 2009. Mr. Hughes, who was then represented by counsel, filed a motion to review the Commissioner's order. Because the Family Court found the Commissioner's decision to be lacking in factual and legal support, a *de novo* evidentiary hearing was scheduled. The evidentiary hearing took place on April 23, 2010. Ms. Peterson was represented by counsel and Mr. Hughes appeared *pro se*. Based on the evidence presented, the Family Court found that Mr. Hughes had obtained Ms. Peterson's signature through undue influence. By order dated May 12, 2010, the Family Court granted Ms. Peterson's motion to rescind the separation agreement, retaining jurisdiction over ancillary matters.

On April 19, 2011, the Family Court held a hearing on the division of marital property and, on June 15, 2011, issued its property division order. Considering the factors outlined in title 13, section 1513(a) of the Delaware Code, the Family Court divided the parties' marital assets 55%/45% in favor of Ms. Peterson and divided the parties' marital debts 45%/55%, also in her favor. The Family Court ordered Mr. Hughes to remove Ms. Peterson's name from a mortgage against his real property located in Delmar, Delaware, and to pay her the sum of $60,660. That sum principally represented monies removed by him from the parties' joint accounts for his own benefit and without Ms. Peterson's knowledge.

On July 18, 2011, the Family Court issued its decision on Ms. Peterson's petition for attorney's fees. Noting that Mr. Hughes had filed no response to the petition, the Family Court found that Ms. Peterson's attorney had been forced to spend significantly more time on her case due to Mr. Hughes' obstructionism and lack of candor. On that basis, the Family Court ordered Mr. Hughes to reimburse Ms. Peterson's attorney in the amount of $11,300.

### Issues On Appeal

In this appeal, Mr. Hughes alleges that the Family Court erred and/or abused its

discretion when it determined: first, that Ms. Peterson did not voluntarily sign the separation agreement; second, that the division of marital assets and debts should favor Ms. Peterson; and third, that he was obligated to pay a portion of Ms. Peterson's attorney's fees.

### Standard of Review

Our standard of review of a decision of the Family Court extends to a review of the facts and the law, as well as the inferences and deductions made by the trial judge.[3] The trial judge's findings of fact will not be disturbed unless they are determined to be clearly erroneous.[4] We will not substitute our opinion for the findings of the trial judge as long as those findings are supported by the record and are the product of an orderly and logical deductive process.[5] Questions of law are reviewed *de novo*.[6]

### Agreement Properly Rescinded

Mr. Hughes contends that the Family Court erred and/or abused its discretion when it determined that Ms. Peterson did not voluntarily sign the separation agreement, but did so because of undue influence exerted by him. Undue influence occurs when the following four elements are present: first, a person who is subject to influence; second, an opportunity to exert undue influence; third, a disposition to exert such influence; and fourth,

a result indicating the presence of undue influence.[7]

Based upon the evidence presented at the hearing, the Family Court found that Mr. Hughes had not filed his PFA petition in good faith, but had used it to manipulate himself into a position of control over Ms. Peterson. Mr. Hughes admitted that he was not afraid that Ms. Peterson would harm him. That admission raised questions about his motivation for filing the petition. Mr. Hughes was aware that Ms. Peterson's job as a correctional officer would be in jeopardy if she were found to have committed an act of abuse.

The Family Court concluded that Mr. Hughes had used his wife's fear of losing her employment due to the PFA, as well as her strong desire to reconcile with him, as a means of forcing her to sign the separation agreement. In reaching that conclusion, it noted:

> The entry made by Balloto in his notary log underscores the inherent difficulty in coupling the negotiation of a marital property agreement with a pending PFA hearing. Even without the threat of loss of employment, executing a separation agreement on the same day a PFA petition is resolved, raises the questions of intimidation and fairness.

The Family Court also found that Ms. Peterson, who was unrepresented at the time, had no opportunity to review the agreement with an attorney prior to sign-

3. *Brown v. Div. of Family Servs.*, 14 A.3d 507, 509 (Del.2011) (citing *Powell v. Dep't of Servs. for Children, Youth & Their Families*, 963 A.2d 724, 730 (Del.2008)); *Tribbitt v. Tribbitt*, 963 A.2d 1128, 1130 (Del.2008) (citing *Wife (J.F. V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del.1979)); *Solis v. Tea*, 468 A.2d 1276, 1279 (Del.1983) (citations omitted).

4. *Brown v. Div. of Family Servs.*, 14 A.3d at 509 (citations omitted); *Solis v. Tea*, 468 A.2d at 1279 (citation omitted).

5. *Brown v. Div. of Family Servs.*, 14 A.3d at 509 (citations omitted); *Solis v. Tea*, 468 A.2d at 1279 (citation omitted).

6. *Brown v. Div. of Family Servs.*, 14 A.3d at 509 (citations omitted); *Tribbitt v. Tribbitt*, 963 A.2d at 1130 (citing *In re Heller*, 669 A.2d 25, 29 (Del.1995)).

7. *Robert O. v. Ecmel A.*, 460 A.2d 1321, 1323 (Del.1983), *overruled on other grounds by Sanders v. Sanders*, 570 A.2d 1189 (Del.1990).

ing it. Mr. Hughes admitted that he had reviewed the agreement with an attorney prior to presenting it to Ms. Peterson.

■ Because Mr. Hughes controlled the couple's finances and Ms. Peterson had no detailed knowledge of their assets and debts, the Family Court found that Mr. Hughes was the dominant party in the marriage and that he occupied a superior bargaining position at the time the separation agreement was signed. Where a separation agreement results in the dominant party in the marital relationship profiting at the inferior party's expense, the burden is on the dominant party to prove that the separation agreement is fair.[8] The record reflects that Mr. Hughes did not satisfy that burden of proof.

The Family Court found that the terms of the separation agreement itself, while not unconscionable, heavily favored Mr. Hughes, which he admitted at the hearing. The Family Court independently concluded that the terms of the separation were unfair and that Mr. Hughes exerted undue influence in getting Ms. Peterson to sign it. The Family Court's findings are supported by the record.[9] Its decision to rescind the separation agreement is the product of an orderly and logical deductive process.[10] In the absence of any error of law, we conclude that the Family Court's decision to rescind the separation agreement must be affirmed.

### Property Division Proper

■ Mr. Hughes' second claim is that the Family Court erred and/or abused its discretion when it determined that the division of marital assets and debts should favor Ms. Peterson. Pursuant to section 1513, upon request of either party, the Family Court shall equitably divide, distribute and assign marital property to the parties without regard to marital misconduct, in such proportions as the Family Court deems just after considering all relevant factors. The enumerated factors are: the length of the marriage; any prior marriage of the parties; the age, health, station, amount and source of income, vocational skills, employability, estate, liabilities and needs of each of the parties; whether the property award is in lieu of or in addition to alimony; the opportunity of each for future acquisitions of capital assets and income; the contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property; the value of the property set apart to each party; the economic circumstances of each party at the time the division of property is to become effective; whether the property was acquired by gift; the debts of the parties; and tax consequences.[11] The Family Court need not give equal weight to each factor in reaching its decision.[12]

At the property division hearing, Mr. Hughes testified concerning his earnings and savings. Between January and March of 2008, he had a retirement account with a balance of over $108,000. By March of 2009, the balance in the account had dropped to approximately $25,500, but he was unable to explain where the money in the account went. Nor was he able to explain where the money from various liquidated stocks and another 401K plan went.

8. *Id.*

9. *Brown v. Div. of Family Servs.,* 14 A.3d 507, 509 (Del.2011).

10. *Id.*

11. Del.Code Ann. tit. 13, § 1513(a) (2009).

12. *Olsen v. Olsen,* 971 A.2d 170, 178 (Del. 2009).

According to the testimony presented, Ms. Peterson was the primary breadwinner during the marriage, although Mr. Hughes was responsible for managing the parties' finances, about which Ms. Peterson knew little. Ms. Peterson presented detailed documentation of improvements to Mr. Hughes' home in Delmar, Delaware, many of which were paid for by a loan taken out by Ms. Peterson against her own property in Crisfield, Maryland. Although her name is not on the deed to the Delmar property, Ms. Peterson co-signed a mortgage against the home in the amount of $54,822.

The evidence showed that Mr. Hughes withdrew monies from the parties' joint account and deposited them into a joint account held by Mr. Hughes and his son by another marriage. Ms. Peterson testified that she had no knowledge of this. While Mr. Hughes testified that he spent monies from his retirement account to settle premarital debts of Ms. Peterson, he produced no documentation to support that assertion. Ms. Peterson, on the other hand, produced detailed documentation to support her position that she brought less than $5,000 of debt into the marriage. The evidence showed that a large amount of joint credit card debt incurred by Mr. Hughes without Ms. Peterson's knowledge went into improvements on his Delmar home. Mr. Hughes' claim that Ms. Peterson incurred a sizeable amount of credit card debt on her own during their marriage was unsupported by any documentation.

In its order dividing the parties' marital property, the Family Court explicitly considered each of the § 1513 factors and the evidence adduced at the hearing that was relevant to each. The Family Court's findings are supported by the record.[13] Its property division decision is the product of an orderly and logical deductive process.[14] Accordingly, in the absence of any error of law, we conclude that the Family Court's decision dividing the marital assets 55%/45% in favor of Ms. Peterson and dividing the marital debts 45%/55% in her favor must be affirmed.

### Attorney's Fee Award

Mr. Hughes' final claim is that the Family Court erred and/or abused its discretion when it determined that he was obligated to pay a portion of Ms. Peterson's attorney's fees. The Family Court has broad discretion to award attorney's fees.[15] In an appeal from the Family Court's award of attorney's fees, we apply a deferential standard of review and, in the absence of an abuse of discretion, we will affirm the Family Court's decision.[16]

The record reflects no abuse of discretion on the part of the Family Court in awarding attorney's fees against Mr. Hughes. There was ample evidence that extraordinary efforts on the part of Ms. Peterson's attorney were necessary due to Mr. Hughes' failure to cooperate in producing documentation to support his claims. Thus, in the absence of any legal error or abuse of discretion, we conclude that the Family Court's decision to award attorney's fees to Ms. Peterson's counsel also must be affirmed.

### Conclusion

The judgments of the Family Court are

---

13. *Brown v. Div. of Family Servs.,* 14 A.3d 507, 509 (Del.2011).

14. *Id.*

15. *Smith v. Francisco,* 737 A.2d 1000, 1009 (Del.1999) (citing *Lee v. Green,* 574 A.2d 857 (Del.1990)).

16. *Id.*

affirmed.[17]

**17.** To the extent that Mr. Hughes has pro-
duced documentation to this Court that was
not supplied to the Family Court in the first
instance, we decline to review any such docu-
mentation in this proceeding. Supr. Ct. R. 8.

**1.** The Court *sua sponte* assigned pseudonyms
to the parties by Order dated September 8,
2011. Supr. Ct. R. 7(d).