IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| JACKSON STALLINGS,[1] | § | |
| | § | No. 428, 2022 |
| Respondent Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CN21-02697 |
| MARISSA STALLINGS, | § | Petition No. 21-09752 |
| | § | |
| Petitioner Below, | § | |
| Appellee. | § | |

Submitted: June 14, 2023
Decided:   August 22, 2023

Before **TRAYNOR**, **LEGROW**, and **GRIFFITHS**, Justices.

## **ORDER**

Upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1)   Jackson Stallings ("Husband") filed this appeal from the Family Court's May 27, 2022 order denying his motion to enforce a separation agreement regarding ancillary matters, and the Family Court's October 17, 2022 final ancillary order.  We affirm the Family Court's judgment, but on narrower grounds than relied upon below.

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

(2)     The parties were married on October 5, 2013 and separated in March 2021. Marissa Stallings ("Wife") filed for divorce on April 14, 2021. In March and April 2021, the parties discussed settling the divorce's ancillary matters amicably. As a result of their discussions, Wife's counsel drafted a stipulation and order (the "Separation Agreement" or "Agreement") resolving the ancillary matters of property division, alimony, attorney's fees, and costs.

(3)     The Agreement includes four provisions that required action on behalf of the parties: (1) the former marital home was to be sold and the proceeds divided equally; (2) a rental property owned by Husband's limited liability company was to be sold and the proceeds divided equally; (3) the parties were to divide their household furnishings and belongings; and (4) the parties would each waive all claims either one had for the division of property and for alimony. Wife sent the Separation Agreement to Husband by text message on April 27, 2021. On the following day, he signed and returned the Agreement to Wife. Wife never returned a fully executed version of the Agreement to Husband.

(4)     On June 16, 2021, Wife informed Husband that she was not going to abide by the Separation Agreement. In June and July, after dialogue between the parties and their counsel, the parties sold the marital home but did not sell the rental property. In late July, the parties' counsel exchanged correspondence about the

status of the Separation Agreement. Husband's counsel confirmed that he was still in agreement with it.

(5) In September and October 2021, the parties engaged in discovery, including exchanging requests for production, and submitted a 16(c) Financial Disclosure Report. They continued to engage in settlement discussions into November. The Family Court held its first case management conference on November 22, 2021. Thereafter, the court held a status teleconference on January 5, 2022. On January 28, 2022, Husband filed a motion to enforce the Settlement Agreement (the "Motion"). On May 27, 2022, the Family Court denied Husband's Motion (the "Order"). The court then held a trial on ancillary matters on September 19, 2022, and issued its final decision on ancillary matters on October 17, 2022. Husband appeals the denial of the Motion.

(6) This Court's review of a Family Court order extends to a review of the facts and the law.[2] We review issues of law *de novo*.[3] If the Family Court has correctly applied the law, our review is limited to abuse of discretion.[4]

(7) On appeal, Husband claims that the Family Court erred on two grounds. First, he argues that the Family Court erred in applying the statute of frauds to the

---

[2] *Hughes v. Peterson*, 41 A.3d 395, 398 (Del. 2012).
[3] *Forrester v. Forrester*, 953 A.2d 175, 179 (Del. 2008).
[4] *CASA (Ct. Appointed Special Advoc.) v. Dep't of Servs. for Child., Youth & Their Fams., Div. of Fam. Servs.*, 834 A.2d 63, 66 (Del. 2003).

3

Separation Agreement. Second, he contends that the Family Court's finding that he acquiesced in Wife's repudiation of the Separation Agreement was likewise erroneous.

(8) Having reviewed the Order, the parties' briefing, and the record on appeal, we conclude that: (1) the Family Court erred as a matter of law in applying the statute of frauds to the Separation Agreement; and (2) the Family Court did not err in finding that Husband acquiesced in Wife's repudiation of the Separation Agreement.

(9) First, the Family Court erred as a matter of law in finding that the statute of frauds applies to the Agreement.[5] The statute of frauds does not apply to the Separation Agreement because it is not a contract or sale of land, nor does it create an interest in land. The Delaware statute of frauds states, in relevant part, that "[n]o action shall be brought to charge any person upon any agreement made . . . upon any contract or sale of lands . . . or any interest in or concerning them . . . unless the

---

[5] Over the course of the litigation below and on appeal, the parties have described the nature of the Separation Agreement differently. *Compare* App. to Opening Br. at A15, A40, A144 (describing the Agreement as written in nature in the briefing below and at the Family Court's April 20, 2022 hearing), *with* Opening Br. at 13, 19-31; Answering Br. at 6, 14-15, 17, 19, 30; Reply Br. at 1, 7, 9, 15 (describing the Separation Agreement as oral in nature). In its order, the Family Court never opined on whether the Agreement *itself* was valid, instead describing the parties' situation thusly: "even if the parties had a valid oral agreement to settle the ancillary matters according to the terms of the Separation Agreement, Wife rescinded that agreement, and Husband acquiesced to her rescission by continuing to litigate the divorce." Order at 11. On this issue, we need not weigh in on whether the agreement at issue is in fact oral or written, or whether Husband has successfully invoked exceptions to the statute of frauds, as we find that the statute of frauds does not apply to the Separation Agreement as a matter of law given its content.

4

contract is reduced to writing, or some memorandum, or notes thereof, are signed by the party to be charged therewith."[6]  As to the first category, Delaware courts have found that the statute of frauds is applicable to contracts related to sales of land and land conveyances such as the surrender of a lease interest;[7] an agreement to renew a lease;[8] and conveyance of easements.[9]  Regarding "interests in land,"[10] our courts have described them as being "broader than the word 'title' and embrac[ing] legal and equitable rights"[11] and that they must do more than simply relate to land.  The Separation Agreement falls into neither of these categories.

(10)  Here, the relevant provisions of the Agreement *refer* to, but do not actually involve, any agreement for the sale of the properties themselves, nor any rights or privileges.  And while it does not appear that any Delaware court has decided whether a separation agreement in the family law context falls within the

---

[6] 6 *Del. C.* § 2714(a) (emphasis added).

[7] *See Skyways Motor Lodge Corp. v. Delaware River & Bay Auth.*, 2019 WL 2364320, at *5 & n.68 (Del. Ch. May 31, 2019).

[8] *See CSH Theatres, LLC v. Nederlander of San Francisco Assocs.*, 2015 WL 1839684, at *17 & n.83 (Del. Ch. Apr. 21, 2015), *aff'd sub nom. In re Shorenstein Hays-Nederlander Theatres LLC Appeals*, 213 A.3d 39 (Del. 2019); *see also Hendry v. Hendry*, 2006 WL 4804019, at *7 (Del. Ch. May 30, 2006).

[9] *Hionis v. Shipp*, 2005 WL 1490455, at *4 (Del. Ch. June 16, 2005), *aff'd*, 903 A.2d 323 (Del. 2006).

[10] In the statute of frauds context, the Restatement (Second) on Contracts describes an interest in land as "any right, privilege, power or immunity, or combination thereof, which is an interest in land under the law of property and is not 'goods' within the Uniform Commercial Code."  *See* Restatement Second, Contracts § 127; *see also* 9 Williston on Contracts §§ 25:6, 25:13 ("[a]ny interest, however, that the law regards as real estate is within the statute," whereas "contracts that relate to land but do not involve any agreement for its sale are not within the statute [of frauds].").

[11] *Hendry*, 2006 WL 4804019, at *7.

statute of frauds, we are persuaded by decisions from other jurisdictions that hold that they are not. For example, in *Wilson v. Wilson*,[12] an Ohio appellate court held that a separation agreement did not need to comply with the statute of frauds, noting that "in-court settlement agreements do not need to comply with the statute," and holding that "settlement agreements, in and of themselves, do not assign or grant a lease, estate, or interest in land."[13] A Kansas appellate court similarly held that the statute of frauds could not be used to avoid enforcement of an oral divorce settlement because the agreement "did not actually transfer land interests," but "[r]ather, as part of an overall exchange of assets, it set up a *process*" under which certain interests would be transferred between the parties at a later date."[14] Accordingly, we find that the Family Court erred in finding the statute of frauds applies to the Separation Agreement.

(11) Second, the Family Court did not err in finding that Husband acquiesced in Wife's repudiation of the Separation Agreement. While there is some record evidence to support Husband's position, "[t]his Court does not weigh the evidence, determine questions or credibility, or make its own factual findings."[15] We find that there is sufficient evidence to support the factual findings underpinning

---

[12] 111 N.E.3d 110 (Ohio App. 2018).
[13] *Id.* at 118.
[14] *In re Marriage of Takusagawa*, 166 P.3d 440, 445 (Kan. Ct. App. 2007) (emphasis added).
[15] *Murphy & Landon, P.A. v. Pernic*, 121 A.3d 1215, 1221 (Del. 2015).

the Family Court's holding such that it was "the product of an orderly and logically deductive process."[16]

(12)   Acquiescence is a fact-specific and context-specific defense.  As this Court noted in *Julin v. Julin*, "[a]pplication of the standards underlying the defense of acquiescence is fact intensive, often depending, as here, on an evaluation of the knowledge, intention and motive of the acquiescing party."[17]  As such, our holding is limited to the facts before us today.

(13)   The Family Court's conclusion that Husband acquiesced in Wife's repudiation of the Agreement is supported by the record.  After Wife repudiated the Separation Agreement in June 2021, the parties continued to litigate and negotiate up until nearly two months before trial, actions that would have been superfluous if an enforceable agreement were in place.  For example, in September and October 2021, the parties engaged in discovery, yet none of Husband's document requests related to the Separation Agreement.  Whether continued litigation is evidence of acquiescence in one side's repudiation of a settlement agreement is a case-specific inquiry.  Here, however, the complete record supports a finding of acquiescence.  In addition to Husband's continued litigation efforts, the Family Court observed that in June 2021, shortly after Wife affirmatively repudiated the agreement, Husband also

---

[16] *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972).
[17] 787 A. 2d 82, 84 (Del. 2001); *see also In re Celera Corp. S'holder Litig.*, 2012 WL 1020471, at *9 (Del. Ch. Mar. 23, 2012), *rev'd in part on other grounds*, 59 A.3d 418 (Del. 2012).

7

appeared interested in renegotiating or repudiating the Agreement's terms, particularly relating to the rental property.[18] Accordingly, we find that the Family Court did not err in finding that Husband acquiesced in Wife's repudiation of the Separation Agreement.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ N. Christopher Griffiths*
Justice

---

[18] *See* Order at 16 ("Husband obtained his own appraisal of the property and asked Wife to 'go easy on him,' indicating his acknowledgement [that] the negotiations were not complete and ancillary matters were still being resolved.").