Caleb OLSEN, Respondent Below–Appellant,

v.

Rita OLSEN, Petitioner Below–Appellee.

No. 571, 2008.

Supreme Court of Delaware.

Submitted: April 7, 2009.

Decided: April 28, 2009.

25. *Swann Keys*, 2008 WL 4482705, at *1.

26. *See Folk*, 817 A.2d at 776.

John A. Clark, III, Esquire and N. Christopher Griffiths, Esquire of Connolly, Bove, Lodge & Hutz, LLP, Wilmington, Delaware for appellant.

Kathryn J. Laffey, Esquire of Kelleher & Laffey, Wilmington, Delaware for appellee.

Before HOLLAND, JACOBS, and RIDGELY, Justices.

RIDGELY, Justice.

Respondent–Appellant Caleb Olsen ("Husband") appeals the Family Court's denial of his request for alimony, its award of attorneys' fees to Petitioner–Appellee Rita Olsen ("Wife"), and its equal division of marital property ancillary to their divorce proceeding.[1] Husband makes three arguments on appeal. First, and second, he contends that the court abused its discretion by considering factors outside Title 13, Sections 1512 and 1515 in determining whether he was entitled to alimony, and in awarding Wife attorneys' fees, respectively. Third, he contends that the court abused its discretion by failing to consider his debilitated physical condition and substantial loans in dividing marital property. We find no merit to his arguments and affirm.

## I. Facts and Procedural History

Husband and Wife were married on July 26, 1986, separated on October 21, 2005, and divorced on May 23, 2006. After holding an ancillary hearing on the issues of alimony and property division, the Family Court issued an Ancillary Order on June 23, 2008 denying Husband alimony and dividing the marital property 50% to Husband and 50% to Wife.[2] Neither Husband nor Wife was completely satisfied with the order and each moved for reargument. On reargument, the court revalued certain marital property, but again refused to grant Husband alimony and declined to adjust the division of the marital estate.[3]

At the time of the ancillary hearing, Husband was fifty-two years old. He suffers from several physical ailments, including a torn rotator cuff in his shoulder, a severed tendon in his elbow, and three herniated discs in his back. Husband claims that these injuries hindered his ability to work as a contractor. Throughout the course of the marriage, Husband ran his own construction company, RC Builders ("RC"). When the parties separated in October 2005, Husband testified that he ceased doing business as RC and began working for a friend's construction company, E.M.C., where he earned approximately $20,000 in 2005, 2006, and 2007. However, Husband was laid off in early 2008 and has received unemployment benefits of $217 per week.

Although Husband claimed that he only received income from E.M.C., child support, and unemployment benefits following the separation, Wife introduced evidence at the hearing showing that Husband had worked as a subcontractor for a developer

---

1. Pseudonyms were assigned on appeal pursuant to SUPR. CT. R. 7(d).

2. *Wife (R.O.) v. Husband (C. O)*, Del.Fam., No CN05–05791 (June 23, 2008) [hereinafter *First Ancillary Order*].

3. *Wife (R.O.) v. Husband (C. O)*, Del.Fam., No CN05–05791 (Oct. 22, 2008) [hereinafter *Second Ancillary Order*].

for the last four years. A construction manager for the developer testified that Husband had operated RC until the summer of 2006, at which point he changed the company's name to A & J Enterprise, Inc. ("A & J"). The construction manager also testified that, throughout 2007, the developer paid A & J approximately $214,000. Although Husband denied any involvement, ownership interest, or authority in A & J, Wife introduced evidence on cross-examination that Husband had signed the contract between A & J and the developer. Wife also introduced dozens of checks drawn from A & J's bank account, signed and endorsed by Husband, which were paid to "cash", his son, his former brother-in-law, and E.M.C., and that were also used to pay for Husband's personal expenses, including charge cards and personal income taxes. There was also evidence that Husband had the use of an A & J debit card to pay for various personal expenses, including his personal credit card, electric bill, and a vacation to Canada.

At the time of the ancillary hearing Wife was forty-nine years old. Wife suffers from hypertension, high cholesterol, bone loss, hearing loss, depression, type II diabetes, rheumatoid arthritis, and pulmonary fibrosis. As a result of the pulmonary fibrosis, she has only 50% lung capacity and requires oxygen up to twenty-four hours a day. Wife also sees several medical professionals and requires daily medications to treat her various conditions. She also receives Remicade infusions every eight weeks and physical therapy to treat her rheumatoid arthritis.

Wife has been employed by a major chemical company since 1976. As a result of her deteriorating health, she was on short-term disability from February to July 2005. She then returned to work full-time until September 2007, when she again reduced her hours. From October 2007 to September 2008, Wife was approved for disability and was able to work part-time but receive her full pay. She apparently returned to full-time work in September 2008. Her current base salary is $115,000, with yearly bonuses amounting to 2% of her salary. Wife also participated in and contributed to an employee Savings and Investment Plan ("SIP") beginning in 1978.

Before the marriage, Wife owned a home in Pike Creek, Delaware. She continued to own and maintain her premarital home after the parties were married, and the couple resided there until 1992, when they moved to a home in Newark, Delaware. When the parties separated, Wife moved back to the Pike Creek house. During the intervening period the parties rented out the Pike Creek property.

Husband and Wife have two children who resided with Husband following the parties' separation. Wife paid child support from December 2005 until July 2008, when the youngest child turned eighteen. Both children are now adults and have graduated from high school.

During the course of their marriage, Husband and Wife lived beyond their means, accruing significant marital debt. In an effort to pay off this debt, Wife refinanced her premarital house several times and took loans from her SIP; however, the parties still had over $75,000 in consumer and credit card debt at the time of their separation. Husband claims that Wife controlled the couple's finances and that he was unaware of the debt until the divorce proceedings began.

The court denied Husband's request to divide the marital property 70% to Husband and 30% to Wife, explaining that "Husband was evasive and untruthful with regard to his employment … Husband's evasiveness, the resulting inability of the Court to pinpoint his income, and Wife's severe illness, counterbalance the fact that Wife has substantial income when she is

able to work." [4] The court also decided not to award alimony to Husband, again noting that the "Court was unable to make a determination of Husband's income because he was consistently evasive and untruthful with regard to his employment." [5] Finally, the court awarded Wife attorneys fees based on its finding that "Husband has extended this litigation by contradicting himself under oath and misrepresenting his income and employment to the Court," and that "[h]e willfully attempted to conceal his actual income and his connection to A & J Enterprise, Inc." [6]

## II. Discussion

■■■■ On appeal from a Family Court decision dividing marital property and awarding alimony, we review the facts and the law, as well as the inferences and deductions made by the trial judge.[7] We review conclusions of law de novo.[8] If the law was correctly applied, we review the decision for an abuse of discretion.[9] We will not disturb findings of fact unless they are clearly wrong and justice requires their overturn.[10]

A. *The Family Court did not abuse its discretion by considering that Husband was evasive and untruthful regarding his income in reaching its decision that Husband was not entitled to alimony.*

■■ Husband contends that the Family Court abused its discretion by considering

facts outside Title 13, Section 1512 in reaching its decision that Husband was not entitled to alimony. He argues that in applying Section 1512, the court was improperly influenced by Wife's allegations that he was hiding income.

Section 1512(b) addresses when a party is entitled to alimony as follows:

A party may be awarded alimony only if he or she is a dependent party after consideration of all relevant factors contained in subsection

(c) of this section in that he or she:

(1) Is dependent upon the other party for support and the other party is not contractually or otherwise obligated to provide that support after the entry of a decree of divorce or annulment;

(2) Lacks sufficient property, including any award of marital property made by the Court, to provide for his or her reasonable needs; and

(3) Is unable to support himself or herself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that he or she not be required to seek employment.[11]

Section 1512(c) enumerates factors that the court must consider in determining the amount of alimony a party may receive. According to that section:

---

4. *First Ancillary Order*, at 19.

5. *Id.* at 20; *see also id.* at 22–23.

6. *Id.* at 25.

7. *Forrester v. Forrester*, 953 A.2d 175, 179 (Del.2008); *accord Jones v. Lang*, 591 A.2d 185, 186–87 (Del.1991); *Solis v. Tea*, 468 A.2d 1276, 1279 (Del.1983); *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979); *see also Saldanha v. Saldanha*, 918 A.2d 339 (Del.2006) (Table) (applying standard to alimony orders); *Bothwell v. Both-*

*well*, 877 A.2d 52 (Del.2005) (Table) (applying standard to division of marital property).

8. *Forrester*, 953 A.2d at 179; *Mundy v. Devon*, 906 A.2d 750, 752 (Del.2006).

9. *Forrester*, 953 A.2d at 179; *Jones*, 591 at 186.

10. *Forrester*, 953 A.2d at 179; *Solis*, 468 A.2d at 1279; *Wife J.F. V.*, 402 A.2d at 1204.

11. 13 *Del. C.* § 1512(b)

The alimony order shall be in such amount and for such time as the Court deems just, without regard to marital misconduct, after consideration of all relevant factors, including, but not limited to:

> (1) The financial resources of the party seeking alimony, including the marital or separate property apportioned to him or her, and his or her ability to meet all or part of his or her reasonable needs independently;
>
> (2) The time necessary and expense required to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment;
>
> (3) The standard of living established during the marriage;
>
> (4) The duration of the marriage;
>
> (5) The age, physical and emotional condition of both parties;
>
> (6) Any financial or other contribution made by either party to the education, training, vocational skills, career or earning capacity of the other party;
>
> (7) The ability of the other party to meet his or her needs while paying alimony;
>
> (8) Tax consequences;
>
> (9) Whether either party has foregone or postponed economic, education or other employment opportunities during the course of the marriage;
>
> (10) Any other factor which the Court expressly finds is just and appropriate to consider.[12]

As Husband concedes, the court applied Section 1512. The determination of Husband's income is the necessary first step in the court's analysis of Husband's alleged dependency on Wife. In determining Husband's income, the court examined all of the evidence as to Husband's employment. Although Husband's evidence indicated that since 2004, he had received income only from E.M.C., unemployment benefits, and child support, Wife's evidence indicated that Husband had received substantially more income, from RC and A & J, during that time and that Husband had consistently underreported his income for tax purposes.[13] The court found that Husband was not credible on the issue of his income, noting that he contradicted himself under oath several times and "was consistently evasive and untruthful with regard to his employment."[14] As a result, the court was unable to reconcile the contradictory evidence as to Husband's income, but assumed it was higher than he reported.[15] Because it was unable to properly calculate Husband's income, the court declined to award alimony.

At bottom, Husband's claim is that the Family Court erred in determining that he was not credible. Husband essentially asserts that the court should have considered only his evidence as to income, and not Wife's. This argument is without merit. In ancillary hearings, the trial judge is the finder of fact.[16] It is well-settled law that "[w]hen the determination of facts turns on a question of credibility, and the acceptance or rejection of the testimony of witnesses appearing before [her] those findings of the Trial Judge will be approved upon review, and we will not substitute our opinion for that of the

---

**12.** 13 *Del. C.* § 1512(c).

**13.** *First Ancillary Order* at 13–17.

**14.** *First Ancillary Order* at 20; *Second Ancillary Order* at 10.

**15.** *First Ancillary Order* at 20, 22; *Second Ancillary Order* at 10.

**16.** *See J.P.D. v. J.M.D.*, 413 A.2d 1233, 1237 (Del.1980); *Wife (J.F.V.)*, 402 A.2d at 1204.

trier of fact."[17] Here, the court found Husband was not credible on the issue of his income. This determination is supported by the record. Moreover, the party seeking alimony has the burden of proof and an award of alimony may not be based on speculation or conjecture.[18] Because of Husband's obfuscation, the court could not properly calculate his income. Accordingly, Husband did not carry his burden of proof and the court did not abuse its discretion.

B. *The Family Court did not abuse its discretion by considering that Husband was evasive and untruthful regarding his income in reaching its decision that Wife was entitled to receive attorneys fees.*

■ Husband contends that the Family Court abused its discretion by awarding Wife attorney's fees and costs associated with reconstructing Husband's employment history and income. Husband argues that the court's decision was arbitrary and capricious, because he satisfied his burden of proving dependency upon Wife through his live testimony and tax returns. He further argues that the purpose of Title 13, Section 1515 is to level the playing field between spouses of unequal resources and that the court erred by failing to consider his financial resources.

■ Under Section 1515, the Court may order one party to pay all or part of the reasonable attorney's fees incurred by the other party:

The Court from time to time after considering the financial resources of both parties may order a party to pay all or

part of the cost to the other party of maintaining or defending any proceeding under this title and for attorney's fees, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or after the entry of judgment.[19]

An award of attorney's fees may not be made arbitrarily, and a statement of the reasons for making such an award must appear on the record.[20]

Here, the Family Court awarded Wife attorney's fees charged in conjunction with investigating Husband's employment and income because it found that:

Husband has extended this litigation by contradicting himself under oath and misrepresenting his income and employment to the Court. He willfully attempted to conceal his actual income and his connection to A & J Enterprise, Inc. His attempted deception reached its pinnacle when he was impeached with A & J company checks that he signed, and he continued to maintain that he has no authority in the company. His failure to provide the Court with adequate information with which to calculate his actual income was a detriment to his own request for alimony. Husband's actions have cost him and Wife considerable money, and have wasted this Court's valuable time.[21]

Although Section 1515 is most often invoked to provide a financially disadvantaged spouse with the financial resources to prosecute or defend an action, the Family Court may also grant an award of attorneys' fees based on other equitable

---

17. *Wife (J.F. V.)*, 402 A.2d at 1204.

18. *See J.P.D.*, 413 A.2d at 1237; *Gray v. Gray*, 503 A.2d 198, 202 (Del.1986).

19. 13 *Del. C.* § 1512(c).

20. *Julin v. Julin*, 787 A.2d 82, 84 (Del.2001).

21. *First Ancillary Order* at 25; *see also Second Ancillary Order* at 12.

considerations.[22] In this case, the court's award was based on Husband's evasive and untruthful testimony regarding his income and employment, which imposed unfair and burdensome additional costs on Wife. The Family Court judge articulated reasons that are entirely supported by the record. Accordingly, the court did not abuse its discretion.[23]

C. *The Family Court did not abuse its discretion in dividing the marital property pursuant to Title 13, Section 1513.*

 Husband contends that the Family Court abused its discretion by dividing the marital property equally pursuant to Title 13, Section 1513. He argues that the court failed to consider his debilitated physical condition in conducting its analysis, and also that the court failed to consider Wife's dilution of the marital property.

Section 1513(a) enumerates several factors that the court must consider in dividing the marital property, specifically:

In a proceeding for divorce or annulment, the Court shall, upon request of either party, equitably divide, distribute and assign the marital property between the parties without regard to marital misconduct, in such proportions as the Court deems just after considering all relevant factors including:

(1) The length of the marriage;

(2) Any prior marriage of the party;

(3) The age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties;

(4) Whether the property award is in lieu of or in addition to alimony;

(5) The opportunity of each for future acquisitions of capital assets and income;

(6) The contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker, husband, or wife;

(7) The value of the property set apart to each party.

(8) The economic circumstances of each party at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the party with whom any children of the marriage will live;

(9) Whether the property was acquired by gift, except those gifts excluded by subsection (b)(1) of this section;

(10) The debts of the parties; and

(11) Tax consequences.[24]

Husband argues that the court failed to take into account Husband's physical condition when considering factors three and five. This argument is without merit. The court's decision shows that the court considered Husband's physical condition in its analysis of both factors. As to factor three, the court noted that Husband believed that his injuries impaired his ability to work more than four or five hours at a time. The court explained, however, that Husband's injuries, unlike Wife's, were treatable through surgery and that Husband had ample opportunity to obtain treatment. The court also noted that it was unable to ascertain Husband's true

---

22. *Scarpinato v. Nehring*, 832 A.2d 1252 (Del. 2003) (Table); *Smith v. Fancisco*, Del.Supr., No. 230, 2001, 2001 WL 578571 (May 16, 2001).

23. *See Scarpinato*, 832 A.2d 1252.

24. 13 *Del. C.* § 1513(a).

income due to his evasive and misleading testimony regarding his connection to A & J.[25] The court balanced this against Wife's history of serious health issues, and determined that this factor favored Wife strongly.[26]

As to factor five, the court noted that Husband claimed to have a meager income and that his physical conditions prevented him from earning more. Again, however, the court discounted Husband's claims because he had taken no affirmative steps to address his ailments and the evidence showed that he was, and likely remained, a successful business owner. Moreover, the court again noted that it was unable to calculated Husband's exact income "due to his willful refusal to provide the Court with accurate information regarding A & J . . . ." [27] The Court balanced this evidence against Wife's unrefuted testimony that her multiple ailments inhibit her ability to work full-time and determined that Husband had a greater opportunity to acquire future assets.[28]

Husband also argues that the court failed to take into account Wife's dilution of marital property when considering factor six. This argument is without merit. The court considered Husband's claim that he had no knowledge of the substantial debt incurred during the marriage, but found that his lack of knowledge did not mean that the debt was non-marital.[29] Moreover, Husband was unable to provide any evidence whatsoever to support his claim that those debts were non-marital.[30] In finding that factor six favored Wife, the court noted that Wife had contributed large sums of premarital money to the marriage by taking out a second mortgage on the Pike Creek property and later refinancing the property to pay off marital debt, as well as removing funds from her SIP plan, some of which were premarital, in order to pay marital expenses. The court also noted that Wife had contributed non-marital funds to the marriage in the form of a $26,000 inheritance.[31]

The Family Court did not abuse its discretion in determining that factors three, five, and six favored Wife and that those three factors outweighed the remaining neutral factors. The court has broad discretion in dividing marital property.[32] It is not required to place equal weight on each factor, it is simply required to analyze and balance the factors in reaching a conclusion as to the division of property between the spouses.[33] The court did so here.

### III. Conclusion

The judgment of the Family Court is **AFFIRMED.**

---

**25.** *See First Ancillary Order* at 17; *Second Ancillary Order* at 11; *see also id.* at 12–17.

**26.** *Id.*

**27.** *First Ancillary Order*, at 17; *Second Ancillary Order* at 11.

**28.** *Id.*

**29.** *First Ancillary Order* at 8.

**30.** *Second Ancillary Order* at 9.

**31.** *First Ancillary Order* at 18; *Second Ancillary Order* at 8–9, 10.

**32.** *Gately v. Gately,* 832 A.2d 1251 (Del.2003).

**33.** *Whitesel v. Whitesel,* 651 A.2d 788, 1994 WL 590539, at *5 (Del.1994) (Table).