IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | |
|---|---|
| MATTHEW E. SMART,[1] | § |
| | § No. 433, 2014 |
| Petitioner Below-<br>Appellant, | § |
| | § |
| | § Court Below—Family Court |
| v. | § of the State of Delaware, |
| | § in and for Sussex County |
| NANCY F. SMART, | § File No. CS12-01045 |
| | § Petition No. 12-01824 |
| Respondent Below-<br>Appellee. | § |
| | § |

Submitted:  January 23, 2015
Decided:  April 6, 2015

Before **HOLLAND**, **VALIHURA**, and **VAUGHN**, Justices.

## O R D E R

This 6th day of April 2015, upon consideration of the parties' briefs and the record below, it appears to the Court that:

(1)    The appellant, Matthew Smart ("Husband"), filed this appeal from an order of the Family Court, dated July 9, 2014, which divided the parties' property ancillary to their divorce and awarded permanent alimony to Nancy Smart ("Wife").  Among other things, Husband argues that the Family Court abused its discretion by ordering Husband to pay $1055 per month in alimony to Wife based on its finding that Wife was only capable of earning $9000 per year.  We agree. Accordingly, we reverse and remand for further proceedings.

---

[1] The Court previously assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).

(2)     The parties were married on November 6, 1992, separated on June 15, 2011, and divorced on October 12, 2012.  It was Husband's first marriage and Wife's second marriage.  The parties have two children, a daughter and a son.  The children were both minors at the time the parties separated, but each has since turned eighteen.  Due to their respective financial circumstances and their desire to retain the marital home while their son was still in school, the parties have continued to live together in the marital home after their separation and divorce.  After the parties separated in June 2011, Husband, who had been the primary wage-earner throughout the marriage, continued to pay all of the expenses associated with the home.

(3)     In April 2012, Wife filed a petition for interim alimony.  Wife asserted that she was an unemployed student and that her worker's compensation benefits had run out.  She indicated that she was seeking full-time employment to support herself.  Husband filed a response in opposition.  A Family Court Commissioner held a hearing on Wife's petition.  The Commissioner found that Wife was living in the marital home with the Husband and that Husband was paying all of the expenses associated with the household, including support for the parties' two children (who were both then living with them).  The Commissioner noted that Husband had provided documentation showing that he had made significant payments on Wife's credit card bills and that Husband was in the midst

2

of pursuing personal bankruptcy. The Commissioner further noted that Wife, who was working at the time of the hearing, had provided no evidence of her income or expenses. Because Husband's evidence established that the household expenses exceeded his net available income, the Commissioner denied Wife's petition for interim alimony on September 21, 2012.

(4)     Thereafter, on December 12, 2012, the parties jointly filed their Rule 16(c) financial report. The report reflects that Husband was employed as an instructor at a community college earning $71,270 per year. Wife reported working part-time in retail sales. Before her current employment, Wife had been receiving unemployment compensation of $13,000 per year for the two preceding years. Both parties reported that they had pension plans with the State of Delaware. The parties agreed that the marital home was worth $200,000. The parties had three vehicles and a scooter but no other marital assets to be divided.

(5)     The debts listed by the parties reflected a mortgage and a home equity loan with a combined balance of nearly $200,000. Husband requested in the Rule 16(c) report that he be credited with all payments he made on the mortgage and home equity loan after the parties separated. Husband also requested credit for marital debt that he had consolidated into a single debt in his own name and had discharged in bankruptcy. Husband also requested credit for the costs associated with filing for bankruptcy.

(6)     The Family Court held a pretrial conference with the parties, who were not represented by counsel, on October 16, 2013.  The hearing resulted in a letter order outlining the parties' marital assets (including both parties' pensions) and their debts (including Husband's request for equitable credit for the marital debt that he had discharged in bankruptcy).

(7)     The Family Court held the ancillary hearing on April 21, 2014. Neither party was represented by counsel. Husband and Wife were the only witnesses at the hearing.[2]  The parties agreed at the hearing that the marital home was worth $200,000 but had a mortgage equal to that, leaving the parties with no equity in the home.  Both parties continued to reside in the home since the date of separation, but Husband had paid the mortgage, utilities, and related household expenses.  The parties indicated that they did not wish to sell the house presently because of their teenage son.  After questioning by the trial judge, the parties agreed that they would share the expenses of selling the house and, when the home was eventually sold, they would split the proceeds 50/50.

---

[2] Although the transcript of the hearing reflects that the parties discussed various documents with the judge during the course of the hearing, only some of those exhibits were actually admitted into evidence.  Those hearing exhibits, as well as several other relevant documents that were filed by the parties in this case, were not included in the Family Court record that was transmitted to this Court on appeal.  The documents were only transmitted once the Clerk of the Supreme Court requested them.  This Court cannot conduct a fair and complete review of an appellant's claims on appeal without a complete and accurate trial court record.  We note our concern in this case so that measures may be taken by the Family Court to ensure that complete and accurate records are prepared and transmitted in future appeals.

4

(8) Wife agreed to be responsible for one-half of all of the household expenses, including the mortgage, utilities, insurance, and major and minor capital improvements, as long as she continued to reside in the home. The Family Court noted, however, that Wife did not have the current financial ability to pay her share of the expenses in light of her limited income, which the Family Court found was about $170 per week. As to debts, the Family Court noted that Husband had consolidated the parties' credit card debt shortly after the parties' separation and had had $22,500 worth of marital debt discharged in a bankruptcy proceeding that was filed in his name alone.

(9) In its order dated July 9, 2014, the Family Court awarded Wife one-half the value of Husband's pension and deferred compensation plans but did not mention or equitably divide Wife's pension. The Family Court noted the parties' agreement as to the division of their vehicles. The court also noted the parties' agreement to a 50/50 division of the proceeds from the sale of the marital home once the parties sell it, as well as the parties' agreement to share equally the expenses related to the home so long as Wife remained living there. The Family Court ordered that Husband be reimbursed at the time of settlement for any major capital improvements to home if Wife did not pay her fair share. The Family Court did not address Husband's request for credit for payments that he had made toward the household expenses since the parties' separation in 2011.

5

(10) In considering the statutory factors set forth in 13 *Del. C.* § 1513(a),[3] the Family Court concluded that Husband had superior skills and employability, had greater opportunity for future acquisition of assets, and was in better economic circumstances at the time the property division order would become effective. The Family Court did not address Husband's claim that he was entitled to equitable credit for the financial harm that he alone had suffered as a result of filing for bankruptcy and discharging much of the parties' marital debt in order to preserve Wife's good credit.

(11) Ultimately, the Family Court concluded that the facts weighed in favor of a 55/45 division of the remaining marital assets in Wife's favor. The Family Court divided the value of the personalty that each party had agreed to retain and ordered Husband to pay Wife $9,815 as her share of the value of those marital assets within 45 days of the court's property division order.

---

[3] DEL. CODE ANN. tit. 13, § 1513(a) provides that, in determining how to equitably divide marital property between the parties following their divorce, the Family Court is required to consider the following the factors: (1) the length of the marriage; (2) any prior marriage of the parties; (3) the age, health, station, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties; (4) whether the property award is in lieu of alimony; (5) the opportunity of each for future acquisitions of capital assets and income; (6) the contribution or dissipation of each party in the acquisition, preservation, depreciation or appreciation of the marital property, including the contribution of a party as homemaker, husband or wife; (7) the value of the property set apart to each party; (8) the economic circumstances of each party at the time the division is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to the party with whom any children of the marriage will live; (9) whether the property was acquired by gift, except those gifts excluded by paragraph (b)(1) of this section; (10) the debts of the parties; and (11) tax consequences.

(12) As to Wife's claim for alimony, the testimony was undisputed that Wife had an Associate's Degree in Elementary Education and that she was certified to work as a paraprofessional. Although she had been a stay-at-home mother early in the parties' marriage, she later worked outside the home holding various positions. From 2006 to 2010, she worked as a paraprofessional in a local school district earning approximately $20,000 per year. When her contract was not renewed, Wife collected $13,000 per year in unemployment benefits for two years. In response to the Family Court's question about her health, Wife testified that she suffered from chronic back pain due to a 1999 car accident for which she receives pain injections every six months.[4] Wife also testified that she had been diagnosed with PTSD and ADHD, although she was not currently treating with a mental health professional due to the expense. Wife did not supply any documentation to support these diagnoses.[5] Wife specifically *denied* that her health issues affected her ability to work.[6]

---

[4] In her portion of the Rule 16(c) report, Wife responded "No" to the question: "Do you claim any inability to pay support due to ill health, disability or extraordinary expenses which results in dependency upon the other party for support and/or impairment of earning capacity?"

[5] In her answering brief on appeal, Wife attaches a letter from her family doctor and a letter from a therapist dated November 2014 to support her claims that she suffers from ADHD and anxiety. These documents are not part of the record below and cannot be considered by this Court on appeal. *Delaware Elec. Cooperative v. Duphily*, 703 A.2d 1202, 1207 (Del. 1997).

[6] *See* Ancillary Hearing Transcript at 87 (Apr. 21, 2014). The judge asked Wife, "[D]o your medical problems affect your ability to work?" Wife responded, "I don't allow it to, no. No, I go no matter what, so no, it does not."

(13) Husband testified that he was aware of Wife's back issue but did not know anything about her other diagnoses. He presented some information reflecting a job opening in the local school district for a paraprofessional at a salary of $24,000. He argued that Wife was capable of more than just part-time employment as a sales clerk.

(14) After considering the statutory factors under 13 *Del. C.* § 1512(c) [7], the Family Court concluded that Wife was dependent on Husband for support, that she lacked sufficient property to provide for her reasonable needs, and that she was unable to support herself through appropriate employment.[8] In reaching this conclusion, the Family Court noted that, "While the testimony on Wife's mental

---

[7] DEL. CODE ANN. tit. 13, § 1512(c) (2009). Section 1512(c) provides that the trial court, in determining whether a party is entitled to alimony, must consider:

(1) The financial resources of the party seeking alimony, including the marital or separate property apportioned to him or her, and his or her ability to meet all or part of his or her reasonable needs independently;

(2) The time necessary and expense required to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment;

(3) The standard of living established during the marriage;

(4) The duration of the marriage;

(5) The age, physical and emotional condition of both parties;

(6) Any financial or other contribution made by either party to the education, training, vocational skills, career or earning capacity of the other party;

(7) The ability of the other party to meet his or her needs while paying alimony;

(8) Tax consequences;

(9) Whether either party has foregone or postponed economic, education or other employment opportunities during the course of the marriage; and

(10) Any other factor which the Court expressly finds is just and appropriate to consider.

[8] DEL. CODE ANN. tit. 13, § 1512(b).

health was not as complete as it could have been, I am satisfied that Wife's current untreated mental health issues are a factor in her not being able to be more gainfully employed."[9] The Family Court thus concluded that Wife's current employment as a part-time sales clerk earning $9,000 per year was appropriate to her ability. The Family Court ordered Husband to pay Wife $1055 per month for a ten-year period but permitted Husband to use the alimony payment to pay Wife's fair share of the expenses on the home while she continued to live there, rather than paying the money directly to Wife.

(15) Husband raises several claims in his opening brief on appeal. As to the property division order, Husband asserts that the Family Court: (i) should award him more than 50% of the proceeds from the sale of the house because Wife has not been paying her fair share of the household expenses; (ii) failed to address or equitably divide Wife's pension; (iii) failed to consider Husband's claims that he alone had suffered adverse financial consequences when he consolidated all of the parties' marital credit card debt into one account in his name, which he then discharged in bankruptcy; (iv) did not address Husband's request for credit for the household expenses that he continued to pay after the parties' separation in June 2011; and (v) miscalculated Husband's monthly take-home pay. As to the alimony award, Husband contends that: (i) Wife did not meet her burden of proving that she

---

[9] *M.E.S v. N.F.S*, No. CS12-01045, at 5 (Del. Fam. Ct. July 9, 2014).

9

is incapable of full-time work; and (ii) the ten-year period of alimony should be made retroactive to the date of separation.

(16) This Court's review of an appeal from the Family Court extends to a review of the law and the facts, as well as a review of the inferences and deductions made by the judge.[10] This Court will not disturb findings of fact unless they are clearly wrong and justice requires that they be overturned.[11] If the Family Court has correctly applied the law, our standard of review is abuse of discretion. Errors of law are reviewed de novo.

(17) After careful consideration of the parties' contentions on appeal, we conclude that the judgments of the Family Court as to both property division and alimony must be reversed and the matter must be remanded for further proceedings. We agree with Husband's assertion that the Family Court erred in failing to address Wife's State pension in its equitable division of the parties' marital assets. Moreover, the Family Court did not address Husband's claim for credit for household payments he made after the parties' separation or his claim for equitable credit for the harm he suffered from discharging the parties' marital debt in bankruptcy.[12] Husband's contention that he should be entitled to more than 50%

---

[10] *Wife (J.F.V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

[11] *Forester v. Forester*, 953 A.2d 175, 179 (Del. 2008).

[12] In remanding for further proceedings, we do not hold that the Family Court is required to rule in Husband's favor on these claims, only that Husband fairly raised the issues and the Family Court should address them in its weighing process.

of the sale proceeds from the house because of changed circumstances (namely, that Wife is not paying her fair share as agreed), as well as his contention that the Family Court made an error in calculating his take-home pay, were not presented to the Family Court below and will not be considered by this Court for the first time on appeal.[13]

(18)   As to alimony, it was Wife's burden to prove her dependency and her inability to support herself through appropriate employment.[14]   An award of alimony may not be based on speculation or conjecture.[15]   In this case, Wife never claimed below that she was disabled or that she was unable to work full-time.  She provided no evidence beyond her own testimony that she suffers from ADHD and PTSD.  Although Wife may indeed be dependent on Husband for support, we find the Family Court's conclusion that Wife's "mental health issues pose an obstacle to her obtaining … full-time employment" to be unsupported by the record.  Under the circumstances, we find the Family Court's award of alimony, based on this unsupported finding of fact, to be reversible error.

---

[13] Del. Supr. Ct. R. 8.

[14] *Gregg v. Gregg*, 810 A.2d 474, 483 (Del. 1986).

[15] *Olsen v. Olsen*, 971 A.2d 170, 176 (Del. 2009).

NOW, THEREFORE, IT IS ORDERED that the judgments of the Family Court are REVERSED.  This matter shall be REMANDED for further proceedings consistent with this Order.  Jurisdiction is not retained.

BY THE COURT:

/s/ Karen L. Valihura
Justice