IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| AUDREY WINSTON,[1] | § | |
| | § | No. 148, 2025 |
| Petitioner Below, | § | |
| Appellant, | § | Court Below—Family Court |
| | § | of the State of Delaware |
| v. | § | |
| | § | File No. CN21-01090 |
| KEVIN WINSTON, | § | Petition No. 21-00511 |
| | § | |
| Respondent Below, | § | |
| Appellee. | § | |

Submitted: November 21, 2025
Decided: January 27, 2026

Before **SEITZ**, Chief Justice; **VALIHURA** and **TRAYNOR**, Justices.

### **ORDER**

After consideration of the briefs and the record below, it appears to the Court that:

(1) The appellant ("Ex-Wife") filed this appeal from Family Court orders resolving matters ancillary to her divorce from the appellee ("Ex-Husband"). Ex-Wife contends that the Family Court erred by determining that Ex-Husband did not dissipate $515,000 of marital assets, attributing too much income to Ex-Wife, and shifting some of Ex-Husband's attorneys' fees to Ex-Wife. For the reasons

---

[1] The Court previously assigned pseudonyms to the parties under Supreme Court Rule 7(d).

discussed below, we affirm in part, reverse in part, and remand for further proceedings consistent with this order.

(2) The parties were married on April 15, 1989. They physically separated on April 17, 2018, but they continued to commingle their finances after their physical separation. Ex-Wife filed a petition for divorce on January 8, 2021, and the parties were divorced on March 9, 2021. The Family Court retained jurisdiction over property division, alimony, court costs, and attorneys' fees.

(3) During the marriage, the parties owned and operated a Delaware garage door company. Ex-Husband was the president and 100% equity owner of the company, and Ex-Wife worked for the business. Ex-Husband sold the company in 2015 for an initial payment of $550,000 and quarterly payments of approximately $25,300 for five years. After the sale, the parties sold their marital home, bought a camper, and began traveling and living in the camper, using the quarterly payments from the sale of the garage door business to cover their living expenses.

(4) The parties invested approximately $400,000 of the proceeds from the sale of the garage door business in a marijuana business in Michigan. In 2018, Ex-Husband sold the interest in the marijuana business for $400,000 without telling Ex-Wife. One of the central disputes in this case concerns whether Ex-Husband spent that money for his sole benefit or used it to pay for living expenses for both parties.

2

The Family Court found that Ex-Husband used or retained $184,0000 of the $400,000 for his sole benefit and that amount was therefore subject to division.

(5) Ex-Wife also sought division of several other businesses. Ex-Husband formed two of those businesses (the "Consulting Businesses") before the divorce. The Family Court found that the Consulting Businesses were marital property but, because they "appear to be businesses based on services that Husband will provide" and there was insufficient evidence as to their value, Ex-Husband would retain them without setoff. The other businesses are two entities affiliated with Ex-Husband's current significant other, to whom we refer as "Ms. Fletcher." One of them, "ADSI," was formed in Illinois in 1986 by Ms. Fletcher's late husband and his family. Ms. Fletcher formed the other business, "AHS," in December 2020. On January 1, 2021, a week before Ex-Wife filed the petition for divorce, Ms. Fletcher and Ex-Husband signed an operating agreement providing that Ex-Husband had a 49.9% interest in AHS. Ex-Husband testified that he did not "purchase" an interest in AHS but invested his "expertise." Although the parties submitted evidence regarding AHS, neither party conducted a business valuation. The court found no evidence that marital funds were used to start or run ADSI or AHS and therefore determined that they were not marital property.

(6) At trial, Ex-Wife asked the court to award her a higher percentage of the marital property—80% instead of 50%—in lieu of alimony. The court imputed

3

income of $45,516 to Ex-Wife after finding that she worked part-time by choice and had declined full-time employment at $15 per hour. The court found that Ex-Husband earned $55,000 per year as an employee of AHS. The court acknowledged that certain facts supported Ex-Wife's contention that Ex-Husband was deliberately underpaying himself for litigation purposes—for example, AHS paid the parties' daughter a $75,000 salary and Ms. Fletcher, the co-owner of AHS, earned $95,000 per year—but found no evidence on which to base a different income amount for Ex-Husband.

(7) After considering the parties' respective expenses, the court found that Ex-Wife had a monthly budget deficit of $610 but that the court would not have awarded alimony because Ex-Husband also had a deficit. The court therefore did not adjust the property division percentages in lieu of alimony as Ex-Wife requested. Nevertheless, the court found that it was equitable to award Ex-Wife 65% of the marital assets, with the division of debts in reverse, based primarily on the parties' relative financial prospects.[2]

---

[2] *See* 13 *Del. C.* § 1513(a) (setting forth factors for consideration when dividing marital property, including "(5) The opportunity of each for future acquisitions of capital assets and income" and "(8) The economic circumstances of each party at the time the division of property is to become effective").

(8)	Upon completion of the *Wright* chart,[3] the Family Court concluded that Ex-Husband owed Ex-Wife a total of $138,768 for her portion of marital assets subject to division. Ex-Wife filed a motion for reargument, contending that the court erred in its attribution of her income. The court denied the motion, concluding that the motion did not demonstrate how a different finding as to Ex-Wife's income would have affected the outcome of the case. Ex-Husband also sought reargument, asserting various purported errors. The court rejected Ex-Husband's contentions except to the extent that he identified a mathematical error in the *Wright* chart relating to the value of the camper. After the court adjusted the value of the camper, Ex-Husband owed Ex-Wife a total of $136,540.

(9)	Ex-Husband then filed a motion seeking to shift $34,650 in attorneys' fees and $645 in costs to Ex-Wife. The court found that Ex-Husband made "generous" settlement offers early in the case and Ex-Wife made an unreasonable counteroffer and then proceeded to trial, after which she received less than she would have received from Ex-Husband's offers. Finding that Ex-Wife did not fulfill her obligation to reasonably participate in settlement negotiations, but recognizing that the court "found that Husband did use marital funds for his sole benefit and Wife had to incur fees and costs tracing the funds that Husband used," the court ordered

---

[3] "A 'Wright Chart' is a chart accounting for and dividing the various marital assets and liabilities according to a ratio determined by the court." *Parker v. Parker*, 2012 WL 686045, at *2 n.4 (Del. Mar. 2, 2012) (citing *Wright v. Wright*, 469 A.2d 803 (Del. Fam. Ct. 1983)).

Ex-Wife to pay one half of the $30,900 in attorneys' fees that Ex-Husband incurred after he made his first settlement offer.

(10) On appeal, Ex-Wife argues that the Family Court "misinterpreted Delaware law and committed clear legal error when it failed to find that Husband's wasteful spending of $515,000 in two years was not [sic] dissipation of assets." She asserts that Ex-Husband dissipated $515,000 by (i) withdrawing $115,000 from his IRA account without Ex-Wife's knowledge after the parties separated in 2018, depositing it into a E*Trade account, and then losing almost all the money through trading on the stock market and (ii) spending the $400,000 proceeds from the sale of the marijuana business for his sole benefit. She contends that Ex-Husband's actions constitute dissipation under this Court's decision in *E.E.C. v. E.J.C.*[4]

(11) On appeal from a Family Court decision on property division and alimony matters, this Court reviews conclusions of law *de novo*.[5] We will not disturb the Family Court's rulings if the court's findings of fact are supported by the record and its explanations, deductions, and inferences are the product of an orderly and logical reasoning process.[6] If the court correctly applied the law, then our standard of review is abuse of discretion.[7]

---

[4] 457 A.2d 688 (Del. 1983). In *E.E.C.*, the Court held that a husband dissipated marital assets by spending approximately $340,000 over a ten-year period during which the spouses were separated. *Id.* at 694-97.
[5] *Girardi v. Olsen*, 2023 WL 2486084, at *2 (Del. Mar. 13, 2023).
[6] *Id.*
[7] *Id.*

6

(12)   Contrary to Ex-Wife's argument, the Family Court did not find that Ex-Husband did not dissipate assets.  The court determined that because Ex-Husband failed to meet his burden of showing that the funds he withdrew from the IRA were used for joint expenses, it was appropriate to use the values of the IRA and E\*Trade accounts as of the date of separation ($103,748 and $3,130, respectively) rather than their values at the date of divorce ($14,725 and $1,393, respectively), with those values going on Ex-Husband's side of the *Wright* chart.  That had the effect of awarding Ex-Wife 65% of $106,878—the sum of the two accounts as of the date of separation—while Ex-Husband actually retained only $16,118 as of the date of divorce.  Thus, the Family Court implicitly found that Ex-Husband dissipated the IRA funds and crafted a remedy.  Ex-Wife does not suggest what the court should have done differently.[8]   Similarly, the Family Court implicitly found that Ex-Husband dissipated $184,0000 of the $400,000 proceeds from the sale of the marijuana business and awarded Ex-Wife 65% of that amount.  The Family Court carefully considered the voluminous evidentiary record and the witnesses' testimony, including that of Ex-Wife's expert witness.  We find no basis to reverse the Family Court's factual findings as to the marijuana-business proceeds.

---

[8] Indeed, in Ex-Wife's post-trial brief, Ex-Wife *requested* that the court value the IRA as of the date of separation.  Appendix to Opening Brief at A138.

7

(13)  Next, Ex-Wife argues that the Family Court erred in its findings as to the parties' income.  She contends that the evidence demonstrated that her adjusted gross income was $26,438 and the court erred by attributing her with an annual income of $45,516.  She also asserts that the evidence, including the testimony of her expert witness, showed that Ex-Husband deliberately commingled funds and obfuscated the finances of the businesses in which he held interests to make it appear that he earns less than he does.  Ex-Wife's position appears to be that the court should have awarded her a portion of Ex-Husband's business interests as a result.

(14)  We find no reversible errors as to these issues.  As the Family Court noted when denying Ex-Wife's motion for reargument, the attribution of too much income to Ex-Wife does not change the result in this case unless the court's findings as to Ex-Husband's income are reversed.  Ex-Wife's expert testified that because of the commingling of funds among Ex-Husband and the various businesses, which bore "some of the hallmarks of fraud," "it is nearly impossible to determine definitively how much [Ex-Husband] is making."[9]  In the absence of reliable alternative evidence of Ex-Husband's income, the court accepted Ex-Husband's testimony that he earned $55,000 per year.  After considering his expenses, the court found that he had a budget deficit and that Ex-Wife would not be entitled to alimony. Nevertheless, the court awarded Ex-Wife 65% of the marital estate and 35% of the

---

[9] Appendix to Opening Brief at A983.

marital debts in recognition of Ex-Husband's more favorable financial prospects. The court appropriately exercised its equitable discretion in the circumstances of this case.

(15) As to Ex-Wife's apparent position that the court should have awarded her an interest in the businesses as a remedy for Ex-Husband's obfuscation of the finances, we also find no reversible error. The Family Court found that ADSI and AHS were not marital property and specifically found that Ex-Wife did not prove that Ex-Husband used marital funds to acquire his 49.9% interest in AHS. The proceeds from the sale of the marijuana business were the only apparent source of marital funds that *could* have been used for that purpose, and we addressed the court's findings as to those funds above. As for the Consulting Businesses, based on the Family Court's determination that they were "based on services that Husband will provide," and in the absence of business-valuation evidence, we find no reversible error in the Family Court's ruling that Ex-Husband would retain them without setoff.

(16) Finally, Ex-Wife challenges the Family Court's decision to shift a portion of Ex-Husband's fees to Ex-Wife. She argues that the Family Court "ignored Husband's systematic concealment of his income, in flagrant violation of the rules of discovery and 13 *Del. C.* § 1509(a)(1), and took issue with Wife's attempts to

9

uncover Husband's misrepresentations in discovery."[10]  Ex-Husband contends that Ex-Wife did not preserve this issue below because she did not file a timely opposition to his motion for fees and that the Family Court appropriately shifted fees based on Ex-Wife's overly litigious conduct.

(17)   This Court applies the deferential abuse of discretion standard of review when reviewing a Family Court award of attorneys' fees.[11]  Absent an abuse of discretion, we will affirm the Family Court's decision, even though we might have reached a different conclusion.[12]  The Family Court's discretion when deciding whether to award attorneys' fees is broad.[13]  A fee award must be supported by the evidence and not made arbitrarily.[14]

(18)   Title 13, Section 1515 of the Delaware Code authorizes the Family Court to shift a party's fees to another party "after considering the financial resources of both parties."[15]  Although Section 1515 is most often invoked to provide a financially disadvantaged spouse with the financial resources to prosecute or defend an action, the Family Court may also award attorneys' fees based on other, equitable

---

[10] Opening Brief at 24.
[11] *Tanner v. Allen*, 2016 WL 6135339, at *2 (Del. Oct. 21, 2016).
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] 13 *Del. C.* § 1515.

considerations.[16] Family Court Rule of Civil Procedure 88 permits the Family Court to order a party to pay the other party's fees when "there is a legal or equitable basis" for such order.[17] "The 'equity' exception to the American Rule requires that the movant demonstrate bad faith or its equivalent."[18]

(19) A "finding that a party's conduct prolonged litigation or made it unnecessarily expensive, if supported by the record, may constitute an equitable consideration warranting a fee award."[19] This Court has recognized the importance of holding overly litigious parties accountable for their conduct.[20] But a fee award cannot be supported only by the fact that the party ordered to pay fees was the losing party.[21]

(20) After careful consideration, we reverse the Family Court's decision to shift a portion of Ex-Husband's fees to Ex-Wife. As an initial matter, we conclude that Ex-Wife preserved her arguments for review. The Family Court order states that the court "has no record of a timely response" by Ex-Wife to Ex-Husband's

---

[16] *Olsen v. Olsen*, 971 A.2d 170, 176-77 (Del. 2009); *see id.* at 177 ("In this case, the court's award was based on Husband's evasive and untruthful testimony regarding his income and employment, which imposed unfair and burdensome additional costs on Wife.").

[17] DEL. FAM. CT. R. CIV. PROC. 88; *see also* 10 *Del. C.* § 925(10) (providing that the Family Court has jurisdiction to "[a]ssess fees, costs, and fines"); *Braham v. Braham*, 2008 WL 732013, at *1 (Del. Mar. 20, 2008) (stating that 10 *Del. C.* § 925 "provides for the assessment of fees under equitable principles").

[18] *Braham*, 2008 WL 732013, at *1.

[19] *Tanner*, 2016 WL 6135339, at *2.

[20] *Id.*

[21] *Id.*

11

motion for attorneys' fees. The Family Court docket does not reflect Ex-Wife's opposition to the motion, but it also does not reflect Ex-Husband's motion itself. Moreover, neither the motion nor the opposition are included in the record that the Family Court transmitted to this Court for this appeal. Ex-Wife supplied a copy of the opposition in the appendix to her reply brief, along with verification of timely filing. We therefore conclude that the issue was sufficiently preserved for appeal.

(21) On the merits, we conclude that fee shifting was not justified in the circumstances of this case. The Family Court accepted Ex-Husband's characterization of his settlement offers without considering Ex-Wife's explanations in her opposition to the motion for attorneys' fees as to how those characterizations were inflated and Ex-Husband simultaneously disclaimed his ability to pay the cash portion. Moreover, the court found that Ex-Husband took for his sole benefit $115,000 of marital assets from his IRA, sold a $400,000 business interest without informing Ex-Wife and took at least $184,000 of the proceeds for his sole benefit.[22] The court expressed concern that Ex-Husband was manipulating his income to make it appear lower for litigation purposes[23] and found Ex-Wife's position that Ex-

---

[22] Family Court Order at 12-13; *see also id.* at 17 ("While it *appears* that Husband may have been paying some of Wife's living expenses after the parties financially separated, it is *clear* that Husband was controlling the marital assets and used a significant portion of the funds for his sole benefit and to the detriment of Wife such that there was little left to divide by the time the parties divorced.").

[23] *See* Family Court Order at 9, 14 (stating that Ex-Wife's "argument in this regard may have merit" and that there was "no reasonable explanation for the differences in" Ex-Husband's and

Husband had concealed or dissipated marital assets "more credible" than Ex-Husband's position that he had not.[24] Finally, the court determined that Ex-Husband's financial prospects are stronger than Ex-Wife's. In our view, Ex-Husband's conduct drove up the costs of litigation—by, for example, expanding the scope of necessary discovery and causing Ex-Wife to hire a forensic accountant to attempt to untangle Ex-Husband's records that bore "hallmarks of fraud"—and causing Ex-Wife and her counsel to be reasonably skeptical of his representations and settlement offers. Under these circumstances, we conclude that shifting a portion of Ex-Husband's attorneys' fees to Ex-Wife was not justified "after considering the financial resources of both parties"[25] or as a matter of equity.[26]

---

Ms. Fletcher's incomes from ADSI and AHS, but concluding that the court could not find a higher income for Ex-Husband based on the evidence presented).

[24] *Id.* at 10; *see also id.* at 17 ("Husband has concealed one of the major assets in the marriage and used some of the funds to his sole benefit to the detriment of Wife. Unfortunately, the asset has now been depleted and there is no large asset to transfer to Wife to make up for what Husband wrongfully kept for his sole use.").

[25] 13 *Del. C.* § 1515.

[26] *Braham*, 2008 WL 732013, at *1 ("The 'equity' exception to the American Rule requires that the movant demonstrate bad faith or its equivalent.").

13

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED IN PART, REVERSED IN PART, and REMANDED to the Family Court for further proceedings consistent with this order. Jurisdiction is not retained.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice