**ADELAIDE A.G., Petitioner Below, Appellant,**

v.

**PETER W.G., Respondent Below, Appellee.**

Supreme Court of Delaware.

Submitted: Feb. 21, 1983.

Decided: March 22, 1983.

Marie C. Bifferato (argued) of Howard M. Berg & Associates, P.A., Wilmington, for petitioner below, appellant.

William E. Wright (argued) of Terry, Jackson, Terry & Wright, P.A., Georgetown, for respondent below, appellee.

Before HERRMANN, C.J., HORSEY and MOORE, JJ.

HORSEY, Justice:

Wife appeals an ancillary ruling of Family Court denying her petition for alimony. Finding the Trial Court to have committed legal and factual error, we reverse.

The parties were married in 1960, separated in 1977, and divorced in 1981. Three children were born of the marriage, two of whom are over 18 and in college. The children, the youngest being 11, live with their mother.

Until 1975, the parties lived in New Castle County where husband developed a "thriving" law practice, enabling the parties to lead a comfortable life. That ended when husband was convicted of criminal misuse of clients' funds. Following a prison term and husband's disbarment, the parties sold most of their marital assets to satisfy

husband's defalcations and moved in 1975 to Sussex County.

Over the following year, wife obtained various part-time jobs: office work; museum guide; and waitressing. Since 1976, wife has been working as a temporary part-time instructor in a local community college. Wife, in her mid-forties, holds a BS in Elementary Education which she obtained before marriage. Her youngest child's needs are an impediment to full-time work. On expected 1982 gross income of $11,600, wife's take-home pay is $825 a month.

Husband has also shown initiative and perseverance in securing gainful employment. In three years he progressed from construction laborer to chauffeur to real estate salesman. A licensed broker since 1977, husband's earnings (predominately from commissions) have progressed over the past four years from $18,000 to $41,200[1] in 1981. Stating that the latter year included extraordinary income not likely to be repeated, husband contends his realistic earnings range is between $20,000 and $25,000. On the former income, husband would net after taxes $1,000 per month and on the latter, $1,200 per month. On earnings of $41,200 in 1981, husband should have netted over $1,500 per month.[2] In 1981, husband was also promoted to vice president, commercial and industrial sales, of a prominent beach resort real estate firm in Delaware.

Wife sought "permanent" alimony under 13 *Del.C.* § 1512(a)(3) of $1,000 per month based on the following factors: marriage of over 20 years; precarious health from a chronic blood deficiency and glandular condition; teaching prospects limited to part-time employment without a Masters Degree; absence of any significant marital assets; responsibility for care and upbringing of children; debts resulting from husband's child support arrearages; and disparity in relative incomes of the parties.

The Court denied wife any alimony for failure to meet her burden of proof of dependency under 13 *Del.C.* § 1512(b).[3] Its denial was premised on essentially three findings: (1) that wife had not "aggressively sought ... other employment in addition to teaching at [the college] or full employment as a teacher elsewhere"; hence, wife was not "fully economically employed"; (2) that wife, "by the efforts of [husband]" was not without property since she had $5,000 in securities, would shortly receive $16,000 from husband's sale of his "inheritance" and had salvaged from their marriage jewelry worth at least $13,000; and (3) that wife had failed to demonstrate that she was unable to support herself within the meaning of § 1512(b)(3).[4] The Court then cryptically added that "it cannot reach 13 *Del.C.* § 1512 part (c)[5] if it cannot get past part (b). . . ."

---

1. The $41,200 of gross income included $10,700 of wages and $30,500 of commissions. The record is silent as to husband's 1982 income.

2. The record does not include husband's 1981 tax returns, apparently because husband failed to provide them.

3. 13 *Del.C.* § 1512(b) provides as follows:

 (b) A party is dependent if the party or someone on behalf of the party shall aver in an affidavit of dependency filed in the action and shall prove by a preponderance of the evidence that such party:

 (1) Is dependent upon the other party for support and the other party is not contractually or otherwise obligated to provide that support after the entry of a decree of divorce or annulment;

 (2) Lacks sufficient property including any award of marital property, to provide for the party's reasonable needs; and

 (3) Is unable to support himself or herself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that the custodian not be required to seek employment outside the home.

4. Findings (1) and (3) are obviously interrelated and directed to subsection (b)(3) of § 1512. None of the three findings speaks to subsection (b)(1) of § 1512.

5. 13 *Del.C.* § 1512(c) provides as follows:

 (c) The alimony order shall be in such amounts and for such time, except as limited in time under subsection (a) of this section, as the Court shall deem just without regard to marital misconduct and after considering

■ The Court thereby committed legal error in imposing on wife a burden of proof and standard of dependency at variance with § 1512(b). Stating that a petitioner seeking alimony under § 1512 must show "use of one's abilities", the Court found that wife was "not fully economically employed." Even if the finding were substantiated, it would not conclusively foreclose wife's claim of dependency.

The statutory term "dependent" is not defined within § 1512 or elsewhere in Chapter 15. However, § 1502, setting forth the purpose of the Delaware Divorce and Annulment Act and its construction, states, in pertinent part:

This chapter shall be liberally construed and applied to promote its underlying purposes, which are:

\* \* \* \* \* \*

(5) To award alimony under this chapter to a dependent party but only during the continuance of such dependency;

(6) To award alimony in appropriate cases so as to encourage parties to become self-supporting....

In *Gregory J.M. v. Carolyn A.M.,* Del.Supr., 442 A.2d 1373 (1982), this Court, in rejecting a contention that dependency had not been established for purposes of an alimony award, stated:

The parties seeking alimony must prove by a preponderance of the evidence dependency upon the other party. § 1512(b): *Husband B. v. Wife B.,* Del. Supr., 295 A.2d 701 (1972). Specifically, as the applying party, the Wife must show that she "[l]acks sufficient property ... to provide for [her] reasonable needs; and is unable to support ... [herself]

through appropriate employment. § 1512(b).

Dependency, while not defined by the Statute, means more than a minimal existence or subsistence level. Its meaning is to be "measured against the standard of living established by the parties during their marriage." *Husband J. v. Wife J.,* Del.Fam.Ct., 413 A.2d 1267, 1269 n. 2 (1979).

\* \* \* \* \* \*

In light of the sharp imbalance in the financial positions of the parties, we conclude that the Trial Court did not abuse its discretion in making the alimony award. It implicitly recognized the disparity in incomes, the rehabilitative aspects of alimony contemplated by 13 Del.C. § 1502(6), and the comparative economic situations of the parties over the years as each reaches retirement age. (footnote omitted).

442 A.2d at 1375; 1376.

Under § 1512(b)(1), proof of dependency of one party upon another is directly related to "support", a term that is also undefined. However, as dependency means more than mere subsistence, so does "support." Hence, "support" under § 1512(b)(1) and under (b)(3) is used in its broad sense. *See, Black's Law Dictionary* (5th Ed.):

*Support,* n. That which furnishes a livelihood; a source or means of living; subsistence, sustenance, or living. In a broad sense the term includes all such means of living as would enable one to live in the degree of comfort suitable and becoming to his station of life. It is said to include anything requisite to housing,

all relevant factors justified by the evidence, including:
(1) Financial resources of the party seeking alimony including marital property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with such party includes a sum for that party as custodian;
(2) Time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment;

(3) Standard of living established during the marriage;
(4) Duration of the marriage;
(5) Age, and the physical and emotional condition of the party seeking alimony;
(6) Ability of the other party to meet his or her needs while meeting those of the party seeking alimony; and
(7) Tax consequences.

feeding, clothing, health, proper recreation, vacation, traveling expense, or other proper cognate purposes; also, proper care, nursing, and medical attendance in sickness, and suitable burial at death. See also *maintenance.*

Applying these constructional guidelines for a dependency determination, we find the Trial Court to have committed reversible error in rejecting wife's alimony claim on dual grounds of being underemployed and not lacking in property to meet her needs.

The Court's rejection of wife's claim of dependency is inconsistent with its correct recognition that "[d]ependency has been defined as a relative matter. *R.E.T. v. A.L.T.,* Del.Supr., 410 A.2d 166 (1979)." If dependency were not relative (and thereby related to the concept of support), there would be no logical basis for an award of alimony based on the "partnership" concept of a marriage. *See, R.E.T. v. A.L.T., supra;* and *Cathleen C.Q. v. Norman J.Q.,* Del. Supr., 452 A.2d 951 (1982). Wife's assets (§ 1512(b)(2)) and employability (§ 1512(b)(3)) are clearly and expressly relevant to a determination of her dependency. However, wife's assets and income must then be related to husband's and their respective needs and goals of self-sufficiency. *See,* 13 *Del.C.* § 1502, *supra.*

The Trial Court's remark of being unable to "reach" subsection (c) of § 1512 "if it cannot get past [subsection (b) of § 1512]" also implies that the concepts embodied in the statutory factors found in subparts (1) through (7) of subsection (c) of § 1512 are irrelevant to a determination of dependency under subsection (b).[6] We cannot agree.

In our view, consideration of all the relevant elements set out in subparts (1) through (7) is required to reach a threshold determination of dependency as well as a later determination of amount of an alimony award. Thus, in *G.S.G. v. P.S.G.,* Del. Supr., 412 A.2d 219 (1980), a finding of dependency and award of alimony was affirmed where the purpose of the award was to provide wife with the necessary funds to complete nursing school and obtain employment. Rejecting respondent-husband's argument against any award for failure of petitioner to meet the evidentiary requirements of then § 1512(a)(2) and (3) [which now appear without essential change in § 1512(b)(2) and (3)], we stated:

> Petitioner contended that respondent had created her own dependency by electing to pursue a career in nursing after separation when she was able and qualified to work as a bookkeeper. The Court obviously concluded from the facts before it that "appropriate" employment for respondent was nursing rather than bookkeeping, which meant that respondent would be unable to support herself until she received her degree and was therefore able to find employment.
>
> Indeed, 13 *Del.C.* § 1512(b)(2)[7] expressly authorizes the award of alimony to enable a divorced spouse "to acquire sufficient education or training to enable respondent to find appropriate employment." Thus, it was appropriate for the Court to make the alimony award in question which was clearly related to respondent's educational needs to become self-sufficient.

412 A.2d at 323.

The Court's denial of wife's claim for alimony must also be reversed because it is based on findings of fact, presumably pertinent to § 1512(b)(2) and (3), which are

---

**6.** Indeed, the Trial Court explicitly considered the statutory factors found in subparts (1), (2), (3) and (4) of subsection (c) of § 1512 in determining whether wife was dependent under § 1512(b). However, the Court concluded otherwise on finding wife not to meet the requirements of subparts (2) and (3) of subsection (b) of § 1512. We find those findings of fact to be clearly erroneous, for reasons that follow.

**7.** By 62 *Del.Laws,* c. 168, enacted July 13, 1979, former subsections (b)(1) through (7) were reenacted with minor word changes as subsections (c)(1) through (7) of § 1512. See footnote 5 above.

clearly erroneous. Those findings are: (1) that wife had not "aggressively" sought other employment, apart from her part-time teaching position, or full employment elsewhere; (2) that wife was not making "use of [her] abilities" and hence was not "fully economically employed"; and (3) that wife did not lack sufficient property (for her reasonable needs) since she was about to receive $16,000 from her husband and still retained $5,000 in securities and jewelry worth not less than $13,000.

Findings (1) and (2) lack any substantial supporting evidence in the record. Contrary to the Court's finding # (1), wife's uncontradicted testimony was: that she had sought full-time employment within Sussex County from several banks, public agencies and a real estate developer—all without success. There was no testimony that full-time employment was available to wife in teaching or any other occupation in Sussex County or elsewhere.

Contrary to the Court's finding # (2), wife's unrebutted testimony was: that full-time employment as a teacher was not possible without a Masters Degree, which in turn required full-time university attendance for two years or part-time attendance for four years. And she stated that she lacked funds for the tuition and other expenses entailed. The Court's related statements—that wife "has demonstrated, in the past, talents that the economy rewards" and that if wife were "as active and aggressive as [husband], their incomes might well be on parity"—are nothing more than vague and unsubstantiated assertions.

The Court's finding # (3) that wife was not lacking in sufficient property to be found dependent is erroneous to the extent the Court attributes $16,000 of wife's assets to husband when the sum represented wife's inheritance which husband had previously misappropriated. Thus, $21,000 of wife's $34,000 of assets (including $13,000 of jewelry) was conceded to be non-marital property. The question then becomes whether such property was sufficient to provide for wife's "reasonable needs" with-

in the meaning of 13 *Del.C.* § 1512(b)(2). The Court never addressed the question except to show that wife's assets totaled $34,000 and husband apparently had none other than a late model car and chattels. The Court gave no consideration to the sufficiency of this property over the long term to meet wife's reasonable needs. In *Husband C.W.H. v. Wife M.H.*, Del.Supr., 407 A.2d 1049 (1979), we rejected the contention that a claimant's award of property (real estate) was sufficient to defeat a claim for alimony based on dependency. Here, the Court has given no deliberate consideration to the sufficiency of wife's assets to provide for her "reasonable" needs, both present and future.

Finally, the Court's finding that the earnings differential between the parties was $9,000 was clearly erroneous. The Court thereby compared wife's expected gross income in 1982 of about $12,000 with husband's 1981 net income after all taxes, business expenses, alimony and exemptions (as calculated by husband) of $21,500. On a gross income comparison basis, the difference between the parties' income was $29,000 ($41,200 v. $12,000).

\* \* \* \* \* \*

We reverse as to the Court's denial of alimony to wife; and we affirm the judgment below as to property division, in view of wife's abandonment of this issue on her appeal.

■ However, in view of the protracted litigation between the parties, we conclude that rather than remanding the issue of alimony for further proceedings below, we should end this litigation. Under the record before us, we conclude that an allowance of alimony to wife in the amount of $100 per week is fully justified. In arriving at this amount, we take note of the following: (1) that the Court initially granted wife interim support of $175 a week for herself and their minor children; (2) that husband is under a continuing support order of $75 per week for their remaining minor child; (3) that husband is contributing on an ongoing basis to the college expenses of their older

children; and (4) that on husband's projected average yearly earnings of $25,000 (his upper limit), the difference in the parties' monthly take-home pay is about $400 (husband: $1,200 v. wife: $825).