# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| LESLIE H. LANKFORD,[*] | § | |
| | § | No. 473, 2016 |
| Petitioner Below, | § | |
| Appellant, | § | |
| | § | Court Below: |
| v. | § | Family Court of the |
| | § | State of Delaware |
| EVAN K. LANKFORD, JR., | § | |
| | § | |
| Respondent Below, | § | File No. CN15-01377 |
| Appellee. | § | Petition No. 15-12254 |

Submitted: March 8, 2017
Decided: March 13, 2017

Before **STRINE**, Chief Justice; **VALIHURA** and **SEITZ**, Justices.

Upon appeal from the Family Court. **REVERSED** and **REMANDED**.

Peggy L. Ableman, Esquire, and Janine L. Faben, Esquire, McCarter & English, LLP, Wilmington, Delaware for Appellant.

Jennifer A. Hartnett, Esquire, Hartnett & Hartnett, Hockessin, Delaware for Appellee.

**VALIHURA**, Justice:

---

[*] By Order dated September 15, 2016, the Court assigned pseudonyms to the parties pursuant to Del. Supr. Ct. R. 7(d).

Pending before this Court is Leslie H. Lankford's ("Wife") appeal from the Family Court's August 15, 2016 Letter and Order modifying its July 1, 2016 Ancillary Order awarding alimony to Wife.[1] In the Ancillary Order, the Family Court found that Wife was dependent on her ex-husband, Evan K. Lankford, Jr. ("Husband"), and therefore entitled to alimony.[2] On reargument, the Family Court recalculated Wife's income and expenses and determined that Wife was not dependent on Husband for the purposes of alimony based solely on Wife's monthly surplus of $260.

For the reasons set forth below, we hold that the Family Court abused its discretion by basing its dependency determination solely on one of the statutory factors provided in 13 *Del. C.* § 1512(c). Accordingly, we REVERSE and REMAND this matter to the Family Court for reconsideration of dependency in light of all relevant factors enumerated in Section 1512(c).

## I.     RELEVANT FACTS AND PROCEDURAL BACKGROUND

Husband and Wife married in 1993 after Wife immigrated to the United States from Hong Kong for the purpose of marrying Husband. Husband and Wife had three children, two of whom were minors at the time of the Ancillary Order.[3] Throughout the marriage, the family lived with Husband's mother in Husband's mother's home. Wife's

---

[1] *See In re Marriage of* [*Lankford*] *and* [*Lankford*] (*Ancillary Order*), No. CN15-01377 (Del. Fam. Ct. July 1, 2016), *available at* App. to Opening Br. at A23-51, *modified on reargument*, [*Lankford*] *v.* [*Lankford*] (*Reargument Order*), No. CN15-01377 (Del. Fam. Ct. Aug. 15, 2016), *available at* App. to Opening Br. at A84-94.

[2] *See Ancillary Order* at 15, 20 (A37, A42).

[3] *Ancillary Order* at 2 (A24). Although Husband and Wife's second child is no longer a minor, this Opinion refers to the two youngest children collectively as "the minor children."

1

testimony suggests that she was encouraged (if not actually forced) to remain as dependent as possible on Husband.[4] At a minimum, Wife's testimony suggests that she experienced a high level of dependence on Husband throughout their long marriage in a manner that limited her ability to gain real-world skills. This circumstance is relevant to the relative economic positions of the parties and Wife's ability to support herself.

After 22 years of marriage, Husband and Wife separated on January 29, 2015 and divorced on January 6, 2016. Wife initially lived with friends until she secured an 890-square-foot, two-bedroom apartment. The minor children "do not feel safe in the apartment," which they have stated "is not in a good area of town" and "is for 'poor people.'"[5] She has struggled to secure full-time employment due to her low skill level and difficulty with the English language. Instead, she works three part-time, entry-level jobs to "make ends meet."[6] Wife testified that she lived frugally following separation

---

[4] According to Wife, who arrived in this country knowing very little English, Husband did not permit her to obtain a driver's license for 14 years. App. to Opening Br. at A104-05. As a result, during this period she was confined to the home unless her father-in-law agreed to transport her to the grocery store or the children's school. *Id.* at A105. Wife was a stay-at-home mother, but she also worked part-time during periods of Husband's unemployment. *Ancillary Order* at 9 (A31). Even when she worked outside the home, however, Wife testified that she was still solely responsible for the cooking, cleaning, and yard work. App. to Opening Br. at A105-06. Wife's earnings were deposited directly to Husband's bank account, to which Wife did not have access, though she was able to retain some of the cash she earned babysitting. *Id.* at A106. Wife also testified that Husband hid her green card and refused to permit her to apply for citizenship. *Id.* at A111. Husband denied some of these assertions. *See id.* at A190-92 (driver's license). The Family Court's orders do not address Wife's claims, potentially because, as discussed below, the court viewed its role as purely computational. *See id.* at A109.

[5] *Ancillary Order* at 2 (A24); App. to Opening Br. at A125-26.

[6] *Ancillary Order* at 2 (A24). Specifically, Wife works 6 hours per week at a health club, 20 hours per week at a library, and an average of 15-20 hours per week babysitting. Wife testified that the babysitting hours are "unpredictable." App. to Opening Br. at A105-06, A108.

2

from Husband because she was "scared to death to spend every penny[.]"[7]  Most of her possessions, including her furniture and vehicle, have been donated by members of her church community.

Husband is currently unemployed and receives $330 per week in unemployment. However, he has in the past achieved annual income approaching $60,000.  During the marriage, he made "upwards of $50,000 annually" while working for Comcast for ten years.[8]  At the time the couple separated, Husband worked for the State of Delaware earning $38,515 annually.  He and the couple's two minor children continue to reside rent-free in Husband's mother's home, a brick colonial that the record suggests Husband's mother purchased for approximately $400,000.[9]

In the Ancillary Order, the Family Court noted that "Husband enjoys far better economic circumstances than Wife" and "is significantly the economically stronger spouse" with "the ability to maintain employment in a higher income bracket" despite his current unemployment status.[10]

---

[7] App. to Opening Br. at A127.  Wife testified that she left the marital home only with her clothes and some of her babysitting earnings.  *Id.* at A111.  Nevertheless, she avoided major purchases, such as furniture and a television.  *See id.* at A118, A125.  She testified that she used the money she had when she moved out to secure a replacement green card.  *Id.* at A111.

[8] *Ancillary Order* at 9 (A31).

[9] *See* App. to Opening Br. at A124, A180, A182; *see also Ancillary Order* at 2 (A24).  *But see* App. to Opening Br. at A165-66 (testimony from Husband that in the early 2000s he "made random payments" to his mother for rent); *id.* at A177-78 (testimony from Husband that he "just started paying" rent but could no longer afford to do so).

[10] *Ancillary Order* at 10 (A32); *see also id.* at 9 (A31) (finding that "Husband has a solid work history" and "is in the better position to earn a higher income and he possesses the skillset to obtain higher earning jobs").

3

With respect to alimony, the Family Court discussed the factors provided in Section 1512(c) to determine "the amount of alimony, if any, that should be awarded" as follows:[11]

*1) The financial resources of the party seeking alimony.* The Family Court observed that "Wife receives $1,639 per month from her three part-time jobs and from government subsidies in the form of food stamps[,]" and that "[d]ue to Wife's lack of formal, educational or vocational training as well as her limited skill set, the Court does not attribute Wife with any additional earning capacity."[12] It found that Wife had reasonable monthly expenses of $1,870.23 and incurred a monthly deficit of $472. Accordingly, the Family Court found that Wife was dependent upon Husband.

*2) The time necessary and expense required to attain sufficient education or training.* The Family Court explained that "Wife testified that she has no vocational training and currently has three entry level part-time jobs[,]" and that "[i]t is unlikely that Wife will be able to obtain vocational skills or a higher education degree in the near future given the fact that she works more than 40 hours per week to meet her living expenses."[13]

*3) The standard of living established during the marriage.* The Family Court found that "[t]he parties enjoyed a decent standard of living during the marriage, as Husband earned a healthy salary and the parties lived rent-free in Husband's mother's

---

[11] *Id.* at 13-19 (A35-41).

[12] *Id.* at 13 (A35).

[13] *Id.* at 15 (A37).

4

home."[14]  In addition, it found that "Husband was able to acquire a significant amount of assets during the parties' marriage, and the parties have a minute amount of marital debts."[15]

*4) The duration of the marriage.*  Because the couple had been married for 22 years, the Family Court found that Wife was entitled to alimony for life under 13 *Del. C.* § 1512(d).

*5) The age, physical, and emotional conditions of the parties.*  The Family Court stated that Wife is 44 years old and Husband is 52 years old.  The parties did not provide evidence of their physical or emotional conditions.

*6)  Any financial or other contribution made by either party to the education, training, vocational skills, career or earning capacity of the other.*  The parties did not present evidence pertaining to this factor.

*7) The ability of the other party to meet his or her needs while paying alimony.*  The Family Court found:

> Based on [Husband's] $17,160 current annual income and reasonable monthly expenses of $1,556.18, the Fin Plan shows Husband that Husband's reasonable monthly expenses exceed his monthly income and Husband has a monthly shortfall of $78.00.  Given Wife's reasonable monthly expenses of $1,870.23, the Court finds that Wife is dependent upon Husband for support.  Wife, after paying her reasonable monthly expenses, has a monthly shortfall of $472.  Husband, however, also has a shortfall of $78 per month after paying his reasonable monthly expenses.  The parties, therefore, must share the shortfall.  Pursuant to the attached alimony calculation, Husband shall pay Wife $224 per month in alimony.  The Court finds that Husband has an obligation to Wife to seek and obtain

---

[14] *Id.*

[15] *Id.*

5

full-time employment. Husband shall notify Wife if as and when such employment is obtained so that Wife may file for an adjustment to her alimony support payment.[16]

*8) Tax consequences.* The Family Court took judicial notice that alimony is tax deductible to the payor and taxable income to the recipient.

*9) Whether either party has foregone or postponed economic, education or other employment opportunities during the course of the marriage.* The Family Court determined that:

> Wife testified that English is her second language and that she possesses no vocational skills. Additionally, Wife testified that while working part-time during the parties' marriage, she was also responsible for the child-rearing as well as the household responsibilities. Husband testified that he was the primary financial provider for most of the parties' marriage.[17]

*10) Any other factor that the court finds is just and appropriate to consider.* The Family Court observed that "Wife testified that she was limited in her employment search during the marriage as she did not possess a driver's license, nor did she have a vehicle available to her."[18]

The Family Court concluded that Wife was dependent and entitled to alimony because her reasonable expenses exceeded her income. It explained:

> Based on Wife's inability to meet her reasonable needs independent of Husband, and Husband's inability to meet his own needs while paying alimony, the parties shall share shortfall in the interest of justice. Therefore, Wife's Motion for Alimony is GRANTED. Alimony may only be awarded to a party who "is dependent upon the other party for support." Because Wife's reasonable monthly expenses exceeds her monthly income, she is dependent on Husband for support. Husband shall pay Wife the sum

---

[16] *Id.* at 18-19 (A40-41).

[17] *Id.* at 19 (A41).

[18] *Id.*

of $224.00, subject to modification if as and when Husband obtains full-time employment. Husband shall make the above referenced payment on July 5, 2016, for the month of July, and on the first day of each subsequent month thereafter, with no expiration date.

Husband shall pay retroactive alimony in the amount of $103.00, representing the difference between his overpayment of $300.00 in May 2016 after he was laid off and his underpayment of $179.00 for the month of June 2016. The $103.00 shall be paid within 45 days of the date of this order.[19]

In a motion for reargument,[20] Husband argued that the Family Court's calculation of Wife's monthly income was inconsistent with Wife's undisputed testimony. The Family Court agreed, recalculated Wife's income, and found that Wife had a monthly surplus of $260.[21] Specifically, the Family Court stated:

Husband argued that the Court conclusions regarding Wife's income were not supported by the record. Specifically, Husband claims that at the ancillary hearing held on June 14, 2016, Wife testified that she works a minimum of 20 hours per week at the Hockessin Library at an hourly rate of $10.85 per hour, as well as 6 hours per week at the Hockessin Athletic Club at a rate of $8.25 per hour, and she works between 15-20 hours per week babysitting at an hourly rate of $12 per hour. However, the Court attributed Wife with an income of $1,639.00 per month which reflected $1,300 in earned income and $339 in food stamps benefits. Husband argues that based on Wife's testimony and the evidence presented, Wife actually earns between $1,934.83 to $2429.91 per month. Husband further argued that Wife's babysitting earnings should not be reduced by a tax obligation since Wife did not previously pay taxes on said income until June 2016.

\* \* \*

---

[19] *Id.* at 20 (A42) (citation omitted).

[20] Both parties filed motions for reargument. *See* App. to Opening Br. at A52-56 (Wife's Motion for Reargument); *id.* at A57-71 (Husband's Motion for Reargument). Only those portions of Husband's motion relevant to this appeal are discussed herein.

[21] *See Reargument Order* at 4-6 (A87-89).

The Court first calculated Wife's income at the maximum amount of hours to which she testified as follows: 20 hours per week at $10.85 per hour, 6 hours per week at $8.25 per hour, and 20 hours per week at $12 per hour, for a total of $506.50 per week, or $26,338 per year. Next the Court calculated Wife's income with the least weekly hours for babysitting for 15 hours per week at $12 per hour for a weekly grand total of $446.50 per week, or $24,778 per year. The average of the two above referenced annual income totals is $25,558. Further, for simplicity purposes, the Court did not attribute Wife with additional income for her food stamp benefits, as it zeroed out her corresponding monthly expense for groceries. Wife testified that her food stamps benefit carried over from month to month, indicating that whatever benefit she does not spend in one month is available to her in the next month.

After making the above referenced adjustment to Wife's income and expenses, along with an adjustment for Husband's tax status as indicated below, Wife shows a monthly surplus of $260.00. Therefore, the Court finds that Wife is not dependent on Husband for purposes of Alimony.[22]

Although the Family Court adhered to its finding that "Wife is clearly the more economically disadvantaged spouse"[23] in its reconsideration of the division of assets, it reversed its dependency determination based solely on the $260 surplus.[24] It also awarded a credit to Husband for a "total overpayment of interim alimony to Wife [of]

---

[22] *Id.* Given the Family Court's apparent assumption that Wife could work full time for 52 weeks per year, a weekly wage of $446.50 translates to an annual income of $23,218. Averaging $26,338 and $23,218 results in an average annual income of $24,778 (and not $25,558 as found by the Family Court) and a monthly income of $2,065, which is lower than the monthly income entered into the Family Court's FinPlan calculation. Accordingly, the Family Court mistakenly attributed more income to Wife than it intended. Also, the Family Court's calculation of Wife's income apparently did not consider the possibility that Wife, an hourly wage earner, will likely be forced on occasion by illness, work closures, or other circumstances to work fewer hours than those presently available to her. The Family Court's calculations appear to assume that Wife would be provided with work and would be physically capable of working over forty hours per week for all 52 weeks in the year. This appears to be an aggressive assumption for imputing income to a non-salaried person who testified that her hours could be "unpredictable." On remand, recalculation of Wife's income will be necessary to correct the computational error described above and to fairly account for the realities of hourly employment.

[23] *Id.* at 9 (A92).

[24] *Id.* at 6 (A89).

8

$5,694" to be deducted from his property division obligation.[25]

On appeal, Wife contends that the Family Court incorrectly calculated her monthly income and expenses, failed to consider Husband's earning potential, and disregarded the standard of living she and Husband enjoyed prior to separating. She further asserts that the Family Court erred by ending its inquiry before reaching the statutory factors in Section 1512(c). She urges this Court to remand for reconsideration of dependency based upon the standard of living established by the parties during the marriage and Husband's reasonable future earning capacity and, if needed, recalculation of Husband's credit for alimony overpayments. She seeks full consideration of the Section 1512(c) factors on remand, even if the result is only a modest or even nominal award of alimony.

## II.    SCOPE AND STANDARD OF REVIEW

"On appeal from a Family Court decision awarding alimony, we review the facts and the law, as well as the inferences and deductions made by the trial judge."[26] "If the law was correctly applied, we review the decision for an abuse of discretion."[27] "The standard of review for an abuse of discretion is whether the Family Court's decision was arbitrary or capricious."[28] "The Family Court's rulings will not be disturbed on appeal if: (1) its findings of fact are supported by the record; (2) its decision reflects due consideration of the statutory factors found in [S]ection 1512; and (3) its explanations,

---

[25] *Id.* at 8 (A91).

[26] *Wright v. Wright*, 49 A.3d 1147, 1150 (Del. 2012) (citing *Olsen v. Olsen*, 971 A.2d 170, 174 (Del. 2009)).

[27] *Id.* (citing *Olsen*, 971 A.2d at 174).

[28] *Id.* (citing *Olsen*, 971 A.2d at 174).

9

deductions and inferences are the product of a logical and deductive reasoning process."[29]

## III.   ANALYSIS

"The Family Court has broad discretion in determining an alimony award."[30] Section 1512 sets forth the Family Court's analysis in determining whether a spouse is dependent and, if so, the amount and duration of alimony that is appropriate:

> (b)  A party may be awarded alimony only if he or she is a dependent party after consideration of all relevant factors contained in subsection (c) of this section in that he or she:
>
>> (1)  Is dependent upon the other party for support and the other party is not contractually or otherwise obligated to provide that support after the entry of a decree of divorce or annulment;
>>
>> (2)  Lacks sufficient property, including any award of marital property made by the Court, to provide for his or her reasonable needs; and
>>
>> (3)   Is unable to support himself or herself through appropriate employment or is the custodian of a child whose condition or circumstances make it appropriate that he or she not be required to seek employment.
>
> (c)  The alimony order shall be in such amount and for such time as the Court deems just, without regard to marital misconduct, after consideration of all relevant factors, including but not limited to:
>
>> (1) The financial resources of the party seeking alimony, including the marital or separate property apportioned to him or her, and his or her ability to meet all of part of his or her reasonable needs independently;
>>
>> (2)  The time necessary and expense required to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment;

---

[29] *Glanden v. Quirk*, 128 A.3d 994, 1002 (Del. 2015) (quoting *Thomas v. Thomas*, 102 A.3d 1138, 1142 (Del. 2014)) (internal quotation marks omitted).

[30] *Wright*, 49 A.3d at 1153 (citing *Olsen*, 971 A.2d at 178).

10

(3)  The standard of living established during the marriage;

(4)  The duration of the marriage;

(5)  The age, physical and emotional condition of both parties;

(6)  Any financial or other contribution made by either party to the education, training, vocational skills, career or earning capacity of the other party;

(7)  The ability of the other party to meet his or her needs while paying alimony;

(8)  Tax consequences;

(9)  Whether either party has foregone or postponed economic, education, or other employment opportunities during the course of the marriage; and

(10)  Any other factor which the Court expressly finds is just and appropriate to consider.[31]

This Court has held that "consideration of all the relevant elements set out in [Section 1512(c)] is required to reach a threshold determination of dependency as well as a later determination of amount of an alimony award."[32]  "There is no requirement that the Family Court equally weigh each factor.  Instead, the Family Court must analyze and balance the factors to reach a prudent alimony award that is fair to both parties."[33]

The party seeking alimony bears the burden of demonstrating by a preponderance of the evidence that he or she is dependent and unable to support himself or herself.[34]

---

[31] 13 *Del. C.* § 1512(b)-(c).

[32] *Adelaide A.G. v. Peter W.G.*, 458 A.2d 702, 705 (Del. 1983).

[33] *Wright*, 49 A.3d at 1153.

[34] *Thomas*, 102 A.3d at 1145.

11

"Dependency is not defined by the statute, but it 'has been defined as a relative matter.'"[35] This Court has "interpreted dependency to mean 'more than a minimal existence or subsistence level.'"[36] Additionally, "[t]he meaning of dependency must be 'measured against the standard of living established by the parties during their marriage.'"[37] This Court has also stated that the term "support" in Section 1512(b) is to be construed broadly to "include[] all such means of living as would enable one to live in the degree of comfort suitable and becoming to his station of life."[38]

In this case, the Family Court abused its discretion by making a dependency determination based solely on one statutory factor—Wife's financial resources. Although the Family Court discussed all statutory factors in its Ancillary Order, at the ancillary hearing, the Family Court stated, "[w]e're here to basically see what money she makes, what her expenses are, and put the numbers into a calculation. I don't care whether she's dependent or not."[39] On reargument, the Family Court reversed its dependency finding after considering only Wife's nominal monthly surplus.[40]

---

[35] *Id*. (quoting *Adelaide A.G.*, 458 A.2d at 705) (additional citation omitted).

[36] *Id*. (quoting *Gregory J.M. v. Carolyn A.M*., 442 A.2d 1373, 1375 (Del. 1982)).

[37] *Id*. at 1145-46 (quoting *Gregory J.M.*, 442 A.2d at 1375).

[38] *Adelaide A.G.*, 458 A.2d at 704-05 (quoting *Black's Law Dictionary* (5th ed.)).

[39] App. to Opening Br. at A109; *see also id.* at A114-15 (Family Court stating that evidence of Wife's treatment by Husband would not "come into [its] decision" because "Delaware is a no-fault state" and that any resulting dependency "reflects in what her earnings are and what her expenses are").

[40] *Reargument Order* at 6 (A89).

12

Section 1512(b) and this Court's precedent require the Family Court's analysis to "reflect[] due consideration" of the factors enumerated in Section 1512,[41] including "all relevant factors contained in subsection (c)[.]"[42] By basing its dependency determination solely on Wife's income and expenses, the Family Court gave undue weight to the first factor, and disregarded the other factors in Section 1512(c), including its previous findings regarding the relative economic potential of the parties, their standard of living during marriage, and the temporary nature of the parties' financial positions. Although Husband's unemployment has resulted in some shortfall in his ability to cover his expenses, his shortfall is minimal and has not adversely affected his living arrangements. However, Wife is working long hours, relying on food stamps, and deferring household purchases in an effort to support herself in an apartment that she and her children consider to be undesirable. The result of the Family Court's analysis was an injustice to Wife, whose modest monthly savings were the product of significant post-divorce lifestyle sacrifices. On remand, the Family Court should recalculate Wife's monthly surplus[43] and balance the result with these considerations and all other relevant factors.[44]

## IV. CONCLUSION

Because the Family Court's decision on reargument does not reflect due consideration of all relevant statutory enumerated factors, the Family Court abused its

---

[41] *Glanden*, 128 A.3d at 1002 (quoting *Thomas*, 102 A.3d at 1142).

[42] 13 *Del. C.* § 1512(b); *see Adelaide A.G.*, 458 A.2d at 705.

[43] *See supra* note 22.

[44] *Cf. J.J.C. v. M.M.C.*, 2002 WL 1929500, at *3 (Del. Fam. Ct. Feb. 22, 2002) ("[W]here an alimony recipient is found not dependent at the time of divorce but would be dependent but for the recipient's circumstances, an award of nominal alimony is allowed." (citation omitted)).

13

discretion in determining that Wife is not dependent on Husband. For the foregoing reasons, we REVERSE and REMAND for reconsideration of dependency in light of all relevant statutory factors enumerated in Section 1512(c). Jurisdiction is not retained. The period for filing any motion for reargument is shortened to five days.