IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| ETHAN REYBOLD, | § | |
| | § | No.   246, 2018 |
| Petitioner Below, | § | |
| Appellant, | § | Court Below:   Family Court of |
| | § | the State of Delaware |
| v. | § | |
| | § | File No. CK15-03151 (K) |
| DONNA REYBOLD, | § | Petition Nos. 16-14085 and 17- |
| | § | 03300 |
| Respondent Below, | § | |
| Appellee. | § | |

Submitted:   November 28, 2018
Decided:     February 5, 2019

Before **STRINE**, Chief Justice; **VAUGHN** and **TRAYNOR**, Justices.

## O R D E R

On this 5th day of February 2019, upon consideration of the parties' briefs and the record on appeal, it appears that:

(1)     Appellant, Ethan Reybold (the "husband"), appeals from a Family Court Order granting Appellee, Donna Reybold (the "wife"), interim and permanent alimony.[1]   The husband's sole claim on appeal is that the Family Court erred in ordering him to pay the wife interim and permanent alimony.   He contends that the Family Court failed to give sufficient weight to his own personal, monthly financial

---

[1] Pseudonyms were assigned to both parties on appeal pursuant to Supr. Ct. R. 7(d).

deficit. He also contends that the Family Court did not properly adjust the wife's expenses.

(2)     The parties married on May 5, 2007, and divorced on September 1, 2016, resulting in a total marriage of nine years and four months. They had two children together (ages 11 and 7). The wife receives child support payments from the husband. For sixteen years, and during the nine-year marriage, the husband earned approximately $180,000 annually as a used-car sales manager. During their divorce proceeding, the husband was fired from that job, but he found another in the same field, paying him $96,000 annually. Sometime thereafter, he voluntarily left that job for another car-sales job (to be closer to his children), where he claims to earn $1,500–$2,000 a month before bonuses.

(3)     Three Family Court rulings are pertinent to this appeal.[2] In the first ruling, the court found that the wife was dependent and ordered the husband to pay interim and permanent alimony. The second and third rulings involved cross motions for reargument filed by the parties in which they challenged various issues in the prior rulings. In the second and third rulings, the court revised the amount of alimony awarded (based on various miscalculations in the prior rulings), but the court never deviated from its initial holding that the wife was dependent and,

---

[2] *See* Appellant's Opening Br. Exs. A-C.

therefore, entitled to alimony from the husband. In each of these three rulings, the Family Court reiterated that it found that both parties lacked credibility.

(4) The alimony award was calculated three times, in each of the Family Court's three rulings. In the first ruling, after the court analyzed all ten statutory factors required to be considered in determining dependency and awarding alimony, it awarded the wife interim alimony of $11,066 and permanent alimony in the amount of $1,006 per month for a period of fifty-four months (half the length of the parties' marriage). In the second ruling, alimony was recalculated based on a corrected child support figure and proper consideration of the wife's social security income. In that order the court awarded interim alimony in the amount of $400 per month retroactive to the wife's filing date for interim alimony. The court also intended to award $400 per month in permanent alimony for a period of fifty-four months, but that amount was misstated as $00. In the third ruling, alimony was again recalculated to take into account inputs not correctly considered in the earlier order. As a result of these recalculations, the court awarded interim alimony in the amount of $130 per month retroactive to the wife's filing date for interim alimony; permanent alimony in the amount of $130 per month for the period of September 22, 2017, to February 1, 2018; and permanent alimony beyond that in the amount of $1,022 per month for fifty months. In the second order, the court had inputted the husband's monthly child support obligation in a field that called for his annual child

support obligation. This was corrected in the third order. The third order also took into account a stipulation between the parties concerning child support.

(5) When reviewing a decision of the Family Court to award alimony, this Court reviews "the facts and the law, as well as the inferences and deductions made by the trial judge."[3] Findings of facts will not be disturbed unless they are clearly wrong.[4] "Moreover, this Court will not substitute its own opinion for the inferences and deductions made by the Trial Judge where those inferences are supported by the record and are the product of an orderly and logical deductive process." [5] Conclusions of law are reviewed *de novo*, but if the law was correctly applied, the decision is reviewed for an abuse of discretion.[6] "The standard of review for an abuse of discretion is whether the Family Court's decision was arbitrary or capricious."[7]

(6) In the absence of an agreement between the parties, the award of alimony in the case of a divorce is governed by 13 *Del. C.* § 1512. Section 1512 provides, "A party may be awarded alimony only if he or she is a dependent party after consideration of all the relevant factors contained in subsection (c) of this section."[8] Subsection (c) contains ten nonexclusive factors that the Family Court

---

[3] *Wright v. Wright*, 49 A.3d 1147, 1150 (Del. 2012).
[4] *Id.*
[5] *Solis v. Tea*, 468 A.2d 1276, 1279 (Del. 1983).
[6] *Wright*, 49 A.3d at 1150.
[7] *Id.*
[8] 13 *Del. C.* § 1512(b).

4

must consider to determine both dependency and the amount of alimony, if any.[9] However, "[t]here is no requirement that the Family Court equally weigh each factor. Instead, the Family Court must analyze and balance the factors to reach a prudent alimony award that is fair for both parties."[10]

(7) The husband contends that the Family Court failed (1) to properly consider and weigh factor (7) of subsection (c), which directs the court to consider "[t]he ability of the other party to meet his or her needs while paying alimony,"[11] and (2) to "properly modify" the wife's expenses, which she admitted were inflated.[12] The Family Court, however, considered factor (7), along with all the other statutory factors, in its first ruling, and it reconsidered factor (7) in its second and third rulings based on changes (and corrections) to the husband's child support obligation and other adjustments. In the first ruling, the court also reduced the wife's current monthly expenses from $5,065.72 (as claimed by her) to $3,337.25, and the court used this reduced monthly expense figure when recalculating the alimony in the second and third rulings. In the first ruling, the court made several findings, which it repeated in the subsequent rulings, including that neither party was

---

[9] *Id.* § 1512(c); *see also Adelaide A.G. v. Peter W.G.*, 458 A.2d 702, 705 (Del. 1983) ("[C]onsideration of all the relevant elements set out in [subsection (c)] is required to reach a threshold determination of dependency as well as a later determination of amount of an alimony award.").

[10] *Wright*, 49 A.3d at 1153.

[11] 13 *Del. C.* § 1512(c)(7).

[12] Appellant's Opening Br. at 10.

credible and that, throughout the litigation, neither party acted in good faith. In particular, it found that the husband had not been completely forthcoming about his earnings and that the wife's monthly expenses were "severely inflated."[13]

(8)   Because the husband's second argument is easily dealt with, we will address it first. The husband contends that the Family Court "did not properly modify [the wife's] expenses as it relates to her award of Interim Alimony, based on her own admission that she had inflated expenses and some expenses were actually paid by her parents during the time she would be eligible for Interim Alimony."[14] The Family Court, however, modified every expense category that was pointed out as being inflated or not paid by the wife. Other than the single quoted sentence above, the husband does not provide any support for his argument that the Family Court did not properly modify the wife's expenses. The adjustment of the wife's expenses was a factual finding; accordingly, we will not disturb the Family Court's finding because, given the record, it was not clearly wrong.[15]

(9)   In order to address fully the husband's first argument regarding factor (7), it is necessary to first summarize the Family Court's three rulings with respect to the husband's income and his ability to meet his needs. In the first ruling, the

---

[13] *Id.* Ex. A, at 22.
[14] Appellant's Opening Br. at 10.
[15] *See Wright*, 49 A.3d at 1150 ("We will not disturb findings of fact [of the Family Court] unless they are clearly wrong.").

court found that although the husband currently earns between $1,500 and $2,000 per month (plus any bonuses received), he did not give any indication of the amount he would receive in bonuses, he previously earned about $96,000 annually (but left that job voluntarily to take his current job), and for sixteen years (including during the nine-year marriage), he earned about $180,000 per year. Next, the court found that "Husband's monthly expenses amount to $8,194, including a rent payment that is high and an excessive car payment."[16] In this ruling, the court ordered the husband to pay the wife $1,006 per month in permanent alimony.

(10) In the second ruling, the court recalculated the alimony award (based on corrected child support figures) and clarified the other figures it used to calculate the amount of alimony. Because the husband's monthly expenses included his child support obligation, this change affected the analysis of the husband's ability to meet his needs under factor (7). For the purpose of the alimony calculation, the court attributed to the husband a "total monthly income, not including bonuses, [of] $8,000," based on his prior income of $96,000 per year.[17] The court also explained, "Husband's expenses are $8,895. Husband has a monthly deficit of $895."[18]

---

[16] Appellant's Opening Br. Ex. A, at 23.
[17] *Id.* Ex. B, at 7-8. Ethan does not contest the Family Court's attribution of an $8,000 monthly income.
[18] *Id.* at 8.

Despite the husband's monthly deficit, the Family Court found that he "is in a position to pay Wife $400 per month in alimony."[19]   The court explained:

> Husband has conceded that he is capable of earning bonuses in his line of work, and furthermore, that he has received bonuses and that traditionally, he has received them consistently.   Prior to earning $96,000 in 2016, Husband previously earned $179,111 annually.     In addition, Husband has several assets worth substantial sums of money.[20]

(11)   In the third ruling, the Family Court again recalculated the alimony award because of issues with, and changes to, the child support figure.   As was the case with the second ruling, these changes affected the analysis of the husband's ability to meet his needs.   The court first recalculated the alimony for the period beginning on September 22, 2017, and ending on February 1, 2018, the date at which point the husband's monthly child support obligation was reduced by the parties' stipulation (from $1,913 to $1,047).   As to this period, the court had mistakenly entered the husband's *monthly* child support obligation ($1,913) into the FinPlan[21] section that actually required the *yearly* total ($22,956).   This reduced the alimony for this period to just $130 per month.

(12)   Using the reduced child support obligation (and entering the annual amount), the court then recalculated the permanent alimony for February 1, 2018,

[19] *Id.*
[20] *Id.*
[21] FinPlan is a computer-generated "standard spreadsheet used to calculate alimony."   *Roberts v. Edwards*, 810 A.2d 350, 2002 31443513, at *1 (Del. Oct. 30, 2002) (Table).

and beyond, resulting in monthly alimony of $1,022. The court explained that "the reduced child support increases Wife's monthly shortfall to $996."[22] Although the court noted that "Husband, based upon income and updated expenses, has a budget shortfall as well," the court did not state the amount of that shortfall.[23] The court reiterated two key findings from its prior two rulings: (1) that the husband's expenses were high, stating "his living expenses alone are more than double that of Wife and children combined"[24] and (2) that it "attributed Husband an income of $96,000,"[25] giving essentially verbatim the reasons provided in the second ruling.[26] Ultimately, for the exact same reasons given in its second ruling,[27] the court found that "Husband is in a position to pay Wife $1,022 per month in alimony."[28]

(13) The husband contends that the Family Court's analysis of factor (7) failed to properly take into account his monthly deficit in comparison to the wife's, stating "[i]t is clear, based on the FinPlan calculations (Exhibits A and B), that [the husband] is unable to meet his own monthly obligations even without paying alimony to [the wife]."[29] He argues, "The case law, and common sense, dictates that a person who is unable to meet his/her own monthly needs, and has a greater

---

[22] Appellant's Opening Br. Ex. C, at 4.
[23] *Id.* at 4-5.
[24] *Id.* at 5.
[25] *Id.* at 6.
[26] *Id.* at 5.
[27] *See supra* footnote 20 and accompanying text.
[28] Appellant's Opening Br. Ex. C, at 5.
[29] Appellant's Opening Br. at 10.

shortfall than the other party, should not be Ordered to pay alimony."[30]   He further argues, "The calculation shows [the husband] has a monthly deficit in excess of $2,000"[31] and "[e]ven using [the wife's] inflated expenses, [the wife] still only has a monthly shortfall of approximately $140."[32]

(14)   The husband is incorrect for several reasons.   First of all, his citation to Exhibits A and B in support of his argument is unavailing given that the specific calculations in Exhibits A and B (the first and second rulings) were changed and corrected by the Family Court's final ruling (Exhibit C).   Second, he relies, in part, upon a spreadsheet at page A38 of his Appendix.   His citation to the spreadsheet is questionable because this spreadsheet was originally filed by the husband as part of his final motion for reargument, and the figure it lists as the wife's monthly deficit ($140) is inconsistent with the Family Court's third ruling, where the court found the wife's monthly deficit to be $996 based on the husband's most up-to-date child support obligation.

(15)   Third, and most importantly, even if the Family Court lacked absolute clarity in its analysis of factor (7) (by failing to explicitly state the husband's monthly deficit in its third ruling), the other statutory factors favor finding the wife dependent

---

[30] *Id.*

[31] *Id.* at 12 (citing Appellant's Opening Br. Exs. A-B and App. to Appellant's Opening Br. at A38).

[32] *Id.* (citing App. to Appellant's Opening Br. at A38).

and granting her alimony. First of all, the Family Court never deviated from its initial holding that the wife was dependent—a finding that was based on a consideration of all ten statutory factors, including factor (10), which directs the court to consider "[a]ny other factor which the Court expressly finds is just and appropriate to consider."[33] In finding the wife dependent, the court explained that: (1) "Wife has been deemed disabled by the SSA [Social Security Administration] since 2009"; (2) "[t]here is no evidence that Wife worked during the parties' marriage"; (3) "Wife testified that Husband did not want her to seek employment during the parties' marriage"; and (4) any additional income that the wife may be capable of earning "would be de minimis and insufficient to cover her monthly expenses."[34]

(16) Additionally, the court found that the husband had not been completely forthcoming with regard to his salary, and his monthly expenses included a high rent payment and an excessive car payment. Because of such findings, we are not persuaded that the court's factor (7) analysis, including the proper weight it should have received, should be disturbed. The cases cited by the husband[35] do not compel a different result. Because the determination of alimony is fact specific, it is not

---

[33] 13 *Del. C.* § 1512(c)(10).
[34] Appellant's Opening Br. Ex. A, at 22.
[35] Appellant's Opening Br. at 10-11 (citing *R.M. v. D.B.M.*, 2002 WL 32101218 (Del. Fam. Dec. 20, 2002); *M.L.S. v. C.W.J.*, 2016 WL 5957287 (Del. Fam. Sept. 30, 2016); and *M.M.D. v. D.L.D.*, 2002 WL 1929749 (Del. Fam. Feb. 6, 2002)).

unusual that the Family Court awarded alimony here when it did not do so in other cases where, under factor (7), the party would be unable to meet his or her needs while paying alimony. Ultimately, this court has held that the Family Court is not required to "equally weigh each factor. Instead, the Family Court must analyze and balance the factors to reach a prudent alimony award that is fair for both parties."[36] And because this was a reargument motion, the Family Court cannot be faulted for reiterating all of its prior relevant findings, including the one in which the Court found that the Husband had several substantial assets that would aid him in his ability to meet his own needs and pay alimony.

(17) Because the Family Court correctly applied the law, by considering "all relevant factors contained in subsection (c),"[37] this Court reviews its decision for an abuse of discretion.[38] Given all the findings discussed above, it cannot be said that the Family Court's decision finding the wife dependent and awarding her alimony was an abuse of discretion.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is **AFFIRMED.**

BY THE COURT:

/s/ James T. Vaughn, Jr.
Justice

---

[36] *Wright*, 49 A.3d at 1153.
[37] 13 *Del. C.* § 1512(b).
[38] *Wright*, 49 A.3d at 1150.

12